18361

Ruth H. HILL, Respondent, v. WOODMEN OF THE WORLD LIFE
INSURANCE SOCIETY, Appellant

(142 S. E. (2d) 869)

134

*Messrs. Smith & Moore* and *Arthur M. Flowers, Jr.,* of Georgetown, *for Appellant,*

*Messrs. Patrick J. Doyle* and *Rosen & Rosen,* of Georgetown, *for Respondent,*

*Messrs. Smith & Moore* and *Arthur M. Flowers, Jr.,* of Georgetown, *for Appellant, in Reply,*

June 15, 1965.

BRAILSFORD, Justice.

This is an action on the double indemnity feature of a policy of insurance on the life of James Freddie Hill, who died suddenly while at work on February 3, 1961. The undertaking by the company was to pay in case death "occurred in consequence of bodily injury effected solely through external, violent, and accidental means, of which * * * there is a visible contusion or wound on the exterior of the body, * * * as a direct result thereof, independently of all other causes."

A hearing was held to determine whether Hill's death was compensable under the South Carolina Workmen's Compensation Act. By agreement, this action was submitted to the circuit court for decision on a transcript of the testimony taken at the compensation hearing. From a

judgment in favor of the beneficiary of the policy, the insurer has appealed.

From about the middle of December, 1960, through January 27, 1961, Hill and other pipe fitters employed by International Paper Company worked unusually long hours under trying conditions. He left work on January 20 to see a doctor. His complaints were of sore throat and tightness of the chest. He was treated for bronchitis. He returned to work next day and to normal eight hours per day schedule on Friday, January 27, 1961. He did no work on Saturday or Sunday. He again visited his doctor on Sunday, January 29, with the same complaints. His activity the following week was entirely normal until he was stricken on the job in the forenoon of Friday, February 3, 1961. On that morning he told his helper that his chest was hurting him and he did not undertake anything strenuous. While he and his helper were returning to the pipe shop after completing an assignment, he suddenly deviated from the route and sat down. The helper testified:

"(I)t sounded as if Freddie were trying to clear his throat * * * and I saw something was wrong with him. * * *It scared me * * *and I hollered for help."

Another workman, who came up after the insured was stretched out on the ground, testified that "his face was flushed and he looked like he was in pretty bad condition." A company nurse testified that when she arrived, the insured "was cyanotic and there was no pulse or respiration or anything." Efforts to revive the insured were continued until the arrival of a physician, who pronounced him dead. This physician, Dr. John T. Assey, signed the death certificate and assigned as the cause of death myocardial infarction or ruptured cerebral aneurysm. The former is a heart attack and the latter the rupture of a blood vessel in the brain.

Dr. Assey and other medical witnesses testified that the only way to ascertain the cause of sudden death with any

certainty is to perform an autopsy, which was not done in this case. The alternative causes were listed because in the doctor's judgment these were the most likely causes of the sudden death of the thirty-eight year old insured. However, he testified that Hill could have died of a pulmonary embolus and that, without an autopsy, any opinion as to the actual cause of death was "strictly conjecture."

The plaintiff called two medical witnesses at the compensation hearing for the purpose of establishing a causal connection between the overwork and strain to which Hill was subjected during the period terminating January 27, 1961, and his death on February 3 following. Under the view which we take of the case, such causal connection may be assumed. Hence, it is unnecessary to review this testimony or that offered by the defendant in rebuttal.

This action is on the insurance contract and plaintiff can recover only upon proof that Hill met his death "in consequence of bodily injury effected solely through external, violent, and accidental means, of which * * * there is a visible contusion or wound on the exterior of the body * * *." Death by heart attack, which we join plaintiff in assuming, even if accidental in the sense that it was the unforeseen result of Hill's unusually strenuous work activity, simply does not meet the conditions on which the company promised to pay the indemnity. Hill did not slip or fall or sustain a blow of any kind. There was no application of external force to his body. In the nature of things, the injury wrought by the heart attack, which one of plaintiff's medical witnesses described as a coronary accident, was internal and incapable of leaving a visible contusion or wound on the exterior of the body. We are unable to agree that this condition of the insuring agreement was met by the testimony as to Hill's appearance after the onset of the attack or by that as to the appearance of his body after death. We endorse the following from *Life & Casualty Insurance Co. of Tennessee v. Brown,* 213 Ga. 390, 99 S. E. (2d) 98, in which the judgment turned on an identical insuring agreement:

"(A)llegation that the internal injury from which the insured allegedly died was revealed by cyanosis which means a bluish tint to the skin, is under the terms and meaning of the policy insufficient to allege that the internal injury which produced his death was revealed by a wound or contusion on the exterior part of his body. The words 'wound' and 'contusion' have well-defined, generally accepted, and understood meanings. The commonly understood and accepted meaning of the word 'wound' is an injury where the skin or other membrane is broken, as by violence or surgery. See Webster's New International Dictionary (2d. Ed.); *Travelers Insurance Co. v. Ansley*, 22 Tenn. App. 456, 124 S. W. (2d) 37, and *Paul Revere Life Insurance Co. of Worchester, Mass. v. Stanfield*, 10 Cir., 151 F. (2d) 776, 777. These authorities, as well as others, define 'contusion' as a bruise affecting subcutaneous tissue without breaking the skin. 'Contusion' in its ordinarily accepted meaning is synonymous with the word 'bruise,' and bruise' is generally defined as a hurt or injury to the flesh by a blunt instrument, or by a fall, producing no break or apparent wound  *  *  *." (99 S. E. (2d) 100, 101.)

In *Paul Revere Life Insurance Co. v. Stanfield*, 10 Cir., 151 F. (2d) 776, the court rejected the contention that a discoloration of the skin following sun stroke met the policy condition that accidental death be evidenced by a contusion or wound on the exterior of the body, saying:

"It is difficult to think of pallor, perspiration, dilated pupils, or a bluish tint to the skin immediately preceding death as either wounds or contusions. To so hold would, in our opinion, do violence to the ordinary accepted meaning of these terms as they are understood by intelligent persons." (151 F. (2d) 777.)

In applying a similar policy provision to a heart attack case, the court in *Massachusetts Mutual Life Insurance Co. v. Pistolesi*, 9 Cir., 160 F. (2d) 668, held that blue lips and pallor, which became apparent after the insured over exerted himself, causing fatal coronary thrombosis, were

not wounds or contusions within the ordinary meaning of these terms.

We are required to interpret the insuring agreement according to the plain ordinary meaning of the words chosen by the parties. The claim that this policy requirement was met by the testimony that Hill looked ill or had a flushed face or was cyanotic cannot survive this test. As has been pointed out, the words "contusions" and "wounds" have well understood meanings, unassociated with the external symptoms of Hill's illness and death, to which alone, the testimony here related. For additional cases tending to support this result see *Travelers Insurance Co. v. Ansley,* 22 Tenn. App. 456, 124 S. W. (2d) 37; *Stirk v. Mutual Life Insurance Co. of New York,* 10 Cir., 199 F. (2d) 874; *Dupee v. Travelers Insurance Co.,* 253 A. D. 278, 2 N. Y. S. (2d) 62.

Most of the decisions cited by respondent and the circuit court involved significantly different insuring agreements, notably, *Barry v. United States Mutual Accident Association,* 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, where the requirement was that there be external and visible sign of injury, and no case has been called or come to our attention in which the symptoms exhibited by a heart attack victim have been held to constitute visible contusions or wounds. The insured in *Goethe v. New York Life Insurance Co.,* 183 S. C. 199, 190 S. E. 451, upon which respondent relies, was a heat stroke victim and the policy in question did not embody the provision which has controlled our decision here.

The visible contusion or wound condition has appeared in comparatively few of the hundreds of appellate court decisions construing insuring agreements indemnifying for accidental death, most of which have turned upon the effect given to the condition, also present here, that death occur, "in consequence of external, violent, and accidental means," or words of like import. We need not decide whether the

facts with which we deal would justify recovery if the visible contusion or wound provision had been omitted from this policy. See Annotation : Heart attack following exertion or exercise as within terms of accident provision of insurance policy. 56 A. L. R. (2d) 800. See also the able and exhaustive opinion by Hall, J., in *Linden Motor Freight Co., Inc. v. Travelers Insurance Co.,* 40 N. J. 511, 193 A. (2d) 217.

Reversed and remanded for entry of judgment for defendant.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.