19032

Larry Cole VARNER, Respondent, v. BALLENGER PAVING COMPANY, INC., and Sloan Construction Co., Inc., Appellants

(173 S. E. (2d) 789)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant, Ballenger Paving Company, Inc.,*

*Messrs. Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Appellant, Sloan Construction Company, Inc.,*

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Respondent,*

*Messrs. Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Appellant, Sloan Construction Company, Inc., in Reply,*

March 31, 1970.

Brailsford, Justice.

The plaintiff, Larry Cole Varner, was grievously injured during the construction of a segment of what is now Interstate Route I-20 in Richland County, when the automobile which he was driving crashed into the rear of a disabled dump truck on the roadway. He sued Ballenger Paving Company, Inc., prime contractor on this segment of the

roadway, and Sloan Construction Company, Inc., a sub-contractor. They have appealed separately, upon a number of grounds, from a judgment in favor of plaintiff. Under the view which we take of the case, only those exceptions need be considered which charge that the court erred in failing to direct a verdict for the defendants upon the ground that plaintiff was guilty of contributory negligence and recklessness. We are mindful that the evidence bearing upon this issue must be viewed in the light most favorable to plaintiff.

The collision occurred on September 15, 1966, while Interstate Route I-20 was under construction from a point in Lexington County to the Richland-Kershaw County line. The cement strips, twenty-four feet wide on each side of the median, had been finished but the shoulders had not been completed, and no part of the route had been opened for public travel. This was a new highway, and at each interchange along the route conspicuous signs were in place reading "Road Closed" or "Keep Out." However, there were no barricades on the traveled portion of the roadway, and some use of it was being made by motorists, which was at least tolerated by the persons engaged in the construction.

Plaintiff lived with his parents east of the Broad River. Since his graduation from Newberry College in June preceding the accident, he had been employed in the City of Columbia and had customarily traveled unopened route I-20 to and from work. His access to the route was from U. S. Highway 176, also known as Broad River Road, west of the river.

Plaintiff was in a deep and prolonged coma following the accident and has no recollection of it or of events for several months before. Hence, he was unable to testify about the collision or his prior use of the route. Nevertheless, the inference is inescapable that he was thoroughly familiar with conditions, knew that the route had not been opened because it was still under construction and knew that signs were prominently displayed to warn the public of these facts. Dis-

regarding a "Road Closed" warning, as was his wont, plaintiff drove upon the roadway from U. S. Highway 176 at about 7:00 P. M., crossed the Broad River and continued in an easterly direction.

At a point several miles east from Broad River a disabled dump truck was parked on the extreme right side of the twenty-four foot eastbound roadway. A subbase of sand and asphalt had been poured on the shoulders at this point. The material was soft and would not support the weight of a vehicle. It was dusk dark, and a station wagon was parked in front of the dump truck with its headlights shining upon it as an aid to the truck driver who was trying to make repairs. The dump truck was without lights. Just across the median a pickup truck driven by a Sloan foreman was parked with emergency lights flashing. A highway patrolman came upon the scene and stopped on the shoulder of the westbound roadway with lights burning. The dump truck driver crossed the median for the purpose of getting some flashlight batteries from the patrolman. As he did so and turned to recross the median, plaintiff's car came into view over a hill crest about one-third of a mile away. It attracted the attention of all three men, and they watched it until it crashed into the back of the dump truck with tremendous force.

The patrolman estimated the speed of plaintiff's car to have been "at least" 70 miles per hour, and testified that "it just went right on into the back of the dump truck." The foreman testified "it was driving at, I would say, a high rate of speed. I estimated it to be running 80 to 85 miles an hour. And I told the patrolman—I said, 'He is going to hit it as sure as the World. He is going to hit it,' and he just run right square into the back of it." The truck driver's testimony was of like tenor.

Plaintiff, evidently not observing the truck in time, made no attempt to avoid the collision by driving to the left, although that side of the roadway was available to him. Skid marks after the collision indicated that he

failed to apply his brakes until the rear wheels of his car were 52½ feet from the rear of the dump truck. This was but a small fraction of the braking distance required to stop his car from a speed of 70 miles per hour. The conclusion is inevitable that plaintiff, while traveling at an excessive speed on a roadway which he knew to be under construction and unopened, was either not keeping an attentive lookout or was far overrunning his range of vision. In either event, he was guilty of contributory negligence and recklessness as a matter of law.

Subject to his duty to exercise due care for his own safety, a motorist on a highway open to the public has the right to assume that it is reasonably safe for travel and free of unlawful obstructions. Quite obviously, no such assumption is justified on a roadway which is under construction and has not been opened. Under such conditions a traveler must be vigilant to discover and avoid any peril which may be encountered, and he must so regulate the speed of his vehicle that it can be brought to a safe stop within the range of his vision. 40 Am. Jur. (2d), Highways, Streets, and Bridges, Sec. 569, p. 42 (1968).

Of the rather numerous decisions of this court cited in the briefs, none involved the burden of care imposed upon a motorist while driving upon a highway which is under construction and has not been opened to the public. We approve of the following apt statement of the applicable rule by the Supreme Court of Missouri:

"Under such conditions the traveler must use and exercise his faculties to see and discover and to so manage his automobile that he may, by the exercise of care commensurate with the circumstances, avoid any dangers and difficulties which he might encounter passing over or along such highway. He must proceed with caution. And the duty to use such care extends not only to the avoidance of particular dangers which are known or apparent but also to the anticipation and discovery of such obstructions as might be dis-

covered by the exercise of due care." *Trantham v. Gillioz,* 348 S. W. (2d) 737 (Mo. App. 1961).

The only reasonable inference from the evidence is that plaintiff's utter disregard of his duty under existing conditions amounted to recklessness which was at least a contributing proximate cause of his injuries barring his recovery from the defendants.

Reversed and remanded for entry of judgment for the defendants.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.