19894

Helen DEESE, Appellant, v. AMERICAN BANKERS LIFE
ASSURANCE COMPANY OF FLORIDA, Respondent

(208 S. E. (2d) 736)

*Messrs. Anerson, Kenyon & Epps,* of Anderson, *for Appellant,*

*Messrs. Watkins, Vandiver, Kirven, Long & Gable,* of Anderson, *for Respondent,*

October 7, 1974.

BRAILSFORD, Justice:

This is an action by the beneficiary of an accidental death policy on the life of her husband, who died of a heart attack on May 13, 1971, while undergoing a bronchostomy for the

removal of two teeth from his lungs. Plaintiff called only one witness, a physician who attended the insured from his admission to the Anderson Hospital until his death some hours later. At the conclusion of this witness' testimony, the court granted an involuntary nonsuit on the ground that the insured's death was not a covered loss. Plaintiff has appealed on the ground that the testimony raised a factual issue whether the insured's death resulted from an accidental injury as defined by the policy.

The insuring agreement was to pay the death benefit of $5,000.00 should "an injury suffered by the insured . . . result in (death) within ninety days after the date of the accident causing such injury." The policy defined "injury" to mean "bodily injury as evidenced by a visible contusion or wound on the exterior of the body (except for drowning or internal injuries revealed by autopsy) caused by accident . . .." In short, the policy insures against death caused by accident injury only if, with inapplicable exceptions, the fatal injury is evidenced by a visible contusion or wound on the exterior of the body.

When the witness saw the insured, "he was acutely and critically ill." His respiration was irregular and labored, he was unresponsive to pain, had high fever, probably secondary to aspiration pneumonia, his heart beat was rapid and irregular, and he was unconscious. While the witness and another doctor were undertaking to put a tube down the patient's throat to provide an airway, he had several severe seizures. Quoting from the doctor's testimony. "(H)e had numerous decayed teeth and bad gums, he in mashing his teeth during the seizures, he bit his tongue, actually split it very badly and was bleeding, the teeth became dislodged during the seizure and he gasped like that and two of them went down his windpipe. One of them went into the usual location in the right lower lung and one went into the left side.* . . . The next morning Dr. Brown took him to the

---

* The fact that the teeth had been inhaled into the lungs was revealed by X-ray.

operating room to put a bronchoscope down; this is an instrument, a hollow tube-like that you can look through and suction through and so forth, put it down the windpipe and withdraw these teeth. During this procedure the man died.

. . . . .

"Q. Do you have an opinion as to the cause of his death, doctor?

"A. Well, I would assume that during the procedure as sick as he was, that he had a heart attack and died.

. . . . .

"In my opinion he expired because of the bronchostomy which was necessitated to get the teeth out. . . ."

An autopsy was performed on insured, but the report made no mention of teeth or any foreign body in the lungs, or of any injury therefrom. The medical witness suggested as possible explanations of this omission that the insured either coughed up the teeth after the X-ray was made, or that they were removed by the bronchoscope.

It is conceded that the insured died of a heart attack induced by a medical procedure made necessary by his accidental inhalation of two teeth into his lungs. Plaintiff's reliance is upon the principle that disability or death resulting from medical treatment of a covered accidental injury is regarded as having been caused by such injury and compensable under an accident policy, if the treatment administered was necessary or proper because of the injury. Annot., 25 A. L. R. (3d) 1386 (1969). Here, the removal of the teeth from insured's lungs was a medical necessity, and the attempted bronchostomy was the appropriate procedure. The dispositive inquiry then is, whether the inhalation of the teeth into the insured's lungs was an injury as defined by the policy. We agree with the conclusion of the circuit court that it was not.

An insurance contract is to be construed liberally in favor of the insured and strictly against the insurer, but where, as here, there is no ambiguity, a court

must construe the policy according to the plain, ordinary meaning of the words by which the parties chose to contract. 11A West's South Carolina Digest, Insurance, Key 146.-5(2) (1971). By the terms of this policy, the death benefit is payable only if death results from "bodily injury as evidenced by a visible contusion or wound on the exterior of the body (except for . . . internal injuries revealed by autopsy) caused by accident. . . ." The "visible contusion or wound on the exterior of the body" condition is comparatively new in accident insurance policies, replacing less restrictive language in earlier contracts. Annot., 28 A. L. R. (3d) 413, 433 (1969).

We applied this condition in *Hill v. Woodmen of the World Life Ins. Soc.*, 246 S. C. 133, 142 S. E. (2d) 869 (1965), in denying recovery for a heart attack, even though considered accidental in the sense that it was the unforeseen result of the insured's unusual exertion. We quote from the opinion:

"In the nature of things, the injury wrought by the heart attack, which one of plaintiff's medical witnesses described as a coronary accident, was internal and incapable of leaving a visible contusion or wound on the exterior of the body. We are unable to agree that this condition of the insuring agreement was met by the testimony as to Hill's appearance after the onset of the attack or by that as to the appearance of his body after death." 246 S. C. at 137, 142 S. E. (2d) at 870.

So here, any injury wrought by the inhalation of teeth into insured's lungs was internal an incapable of leaving a visible wound or contusion on the exterior of the body. The laceration of the tongue, if this be regarded as external, and any lesions of the gums, of which there was no evidence, are irrelevant, because they did not necessitate the fatal bronchostomy, nor evidence the condition which did require it.

Since the inhalation of teeth was not an injury within the restrictive condition of the policy, the principle relied upon

by plaintiff to bring the insured's death by heart attack within the coverage of the accident policy is inapplicable.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.