20484

SLOAN CONSTRUCTION CO., INC., Respondent, v. The CENTRAL
NATIONAL INSURANCE COMPANY OF OMAHA, Appellant.

(236 S. E. (2d) 818)

*Edward W. Laney, III,* and *Elaine H. Beckham of Turner, Padget, Graham* and *Laney,* Columbia, *for Appellant,*

*Hoover C. Blanton,* of *Whaley, McCutchen* and *Blanton,* Columbia, *for Respondent,*

August 9, 1977.

NESS, Justice.

Respondent, Sloan Construction Company, was the defendant in a civil action instituted by one Larry Cole Varner in January of 1966. That action arose from a collision between a dump truck being operated by an agent of Sloan and a vehicle driven by Varner. A Jury verdict for Varner was subsequently reversed by this Court on the ground that Varner was contributorily negligent. *Varner v. Ballenger Paving Company, Inc.* and *Sloan Construction Co., Inc.,* 254 S. C. 120, 173 S. E. (2d) 789 (1970). The total amount

of costs and attorneys' fees incurred in defending the *Varner* action was $9,318.03.

Both the appellant, the Central National Insurance Company of Omaha, and Liberty Mutual Insurance Company had a mutual obligation to defend Sloan in the *Varner* action. Central had issued a comprehensive liability policy to Sloan's agent, the owner of the dump truck, and Liberty had issued a similar liability policy to Sloan.

Despite timely demands made upon Central, it refused to defend Sloan in the *Varner* action. Liberty undertook the defense of the action and engaged the services of a law firm. Costs of defending the suit were taxed against the losing plaintiff, but execution resulted in a "nulla bona" return. The attorneys' fees and costs were paid by Sloan with proceeds of a loan pursuant to a loan receipt agreement with Liberty. The loan is repayable only in the event Sloan is successful in collecting the amount from a third party.

Sloan now seeks to recover the amount of attorneys' fees and costs, plus interest, from Central. The lower court ordered Central to reimburse Sloan for the costs of defense. We disagree and reverse.

It is stipulated that both policies contained provisions affording Sloan a defense in the *Varner* action. Central admittedly breached its obligation to Sloan when it refused to tender a defense upon demand. It is uniformly held that when an insurer refuses to defend and the insured is compelled to conduct his own defense, the insured may recover from the insurer, the reasonable expenses of litigation, including costs and attorneys' fees. 45 C. J. S. Insurance § 926; 7A Appelman, Insurance Law and Practice, § 4691.

Insurance policies are subject to the general rules of contract construction. Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.

*First National Bank of S. C. v. U. S. F and G. Co.,* 373 F. Supp. 235, 239 (D. C. 1974); *Blanton v. Nationwide Mutual Ins. Co.,* 247 S. C. 148, 146 S. E. (2d) 156 (1966); 5 Corbin on Contracts, § 1037.

A liability insurance policy contains two insuring provisions of major significance: one, providing for the payment by the insurer of sums the insured shall become obligated to pay, the other providing, in substance, for the defense of any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy. The latter clause also provides, as a rule, that such a defense will be furnished even if any of the allegations of the suit are groundless, false or fraudulent.

The duty to defend is separate and distinct from the obligation to pay a judgment rendered against the insured. *American Casualty Co. v. Howard,* 187 F. (2d) 322, 327 (4th Cir. 1951). Although these duties are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured.

The duty to defend is personal to each insurer. The obligation is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific contractual right. When Sloan was sued, it had the right to look to both Liberty and Central or to either of them for protection. When Central disclaimed coverage, Sloan demanded full protection from Liberty. When Liberty undertook the defense of the *Varner* action, it was doing no more than it was obligated to do under the terms of its contract with Sloan. The fact that Central also had a duty to defend was irrelevant to the rights and duties existing between Liberty and Sloan by reason of their insurance contract. Central's refusal to defend Sloan did not affect Liberty's obligations to Sloan, and when

Liberty undertook the defense it was acting not for Central but for its insured, Sloan.

Each insurer contracted to defend, at its own expense, any suit within the terms of its policy. Liberty's expenses in defending Sloan were incurred in the fulfillment of its own obligation to its insured.

The attorneys employed to defend the *Varner* suit were selected by Liberty. Both parties concede that Sloan was never legally obligated to pay the attorneys' fees, and had it not done so through the loan proceeds supplied by Liberty, Liberty alone would have been liable for the payment. It follows that Sloan sustained no damage by Central's refusal to defend, since Sloan would never have been held responsible for payment of the debt, as, that obligation belonged solely to Liberty and cannot be transferred to another merely because Sloan voluntarily paid the debt by way of a loan receipt from Liberty.

The fact remains that the *Varner* suit was concluded without any loss or liability to Sloan. Absent any damage flowing to Sloan as a result of Central's refusal to defend, Sloan had no right to recovery against Central. Moreover, although Sloan nominally paid the costs of defense, it is clear that the burden was actually borne by Liberty, through the guise of a loan receipt. Liberty, in paying for the attorneys it employed, was doing no more than it obligated itself to do under its policy with Sloan.

We hold where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty. *Continental Casualty Company v. Curtis Pub. Co.,* 94 F. (2d) 710 (3rd Cir. 1938). "Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services."

*Financial Indemnity Company v. Colonial Insurance Company,* 132 Cal. App. (2d) 207, 281 P. (2d) 883, 885 (1955). Also see *Hartford Accident and Indemnity Company v. S. C. Insurance Company,* 252 S. C. 428, 435, 166 S. E. (2d) 762 (1969).

Sloan was not damaged by Central's refusal to defend since it was never legally obligated to pay the costs of defense. See *Addy v. Bolton,* 257 S. C. 28, 183 S. E. (2d) 708 (1971). Liberty was not damaged because in making the payment it was fulfilling a contractual obligation owed to the insured. Absent any damage, a right of recovery from Central cannot exist.

Respondent relies upon *Wrenn and Outlaw, Inc. v. Employers' Liability Assurance Corp.,* 246 S. C. 97, 142 S. E. (2d) 741 (1965). While there is some language in *Wrenn,* which if isolated could give comfort to respondent's position, an analysis of *Wrenn* reveals that the legal issue raised in the instant case was not presented or argued to the *Wrenn* Court. *Wrenn* primarily involved a coverage issue, i. e. was there coverage under Employers' policy for injuries to Miss Coleman caused by Wrenn's grocery bag boy slamming the trunk lid of a car on her hand, and if there was coverage whether it was primary or excess over Harleysville's policy covering the same loss. In *Wrenn* there was no stipulation, as there is in this case, that the insured was not legally obligated to pay the defense cost as a result of the breach of the insurance contract. Assuming the facts in *Wrenn* were similar, the issue simply was not raised by the attorneys for Employers' as it has been in this case. In *Wrenn* the Court stated, "the cost of defense *incurred* by *Wrenn* amounted to . . ." 246 S. C. at 100, 142 S. E. (2d) at 742 (emphasis added). Additionally in *Wrenn* there was a legal obligation of the insured to pay the judgment obtained by Miss Coleman in the tort action.

In *Hartford, supra,* which followed *Wrenn* this Court clearly held that even if an insurer by way of subrogation stepped into the shoes of its insured, it could not collect

from another insurer who had an equal duty to defend and who failed to do so. When it stepped into its insured's shoes it acquired only the insured's rights and where the insured had incurred no legal liability for those defense costs, *no* recovery could be had.

The inequities, if any, of the results of two insurers owing equal obligations to defend and one bearing the entire cost can be obviated by rewriting the terms of the insurance contracts or by the obligee actually incurring a legal obligation to pay and seeking recovery on a pro-rata basis if it so desires.

Both Liberty and Central were contractually bound to conduct a defense to the *Varner* suit. Liberty fulfilled its obligation and Central breached by refusing to defend. The insured was not damaged because it was afforded a defense by Liberty. Liberty was not damaged by Central's refusal to defend since it was a stranger to the contract between Central and its insured. Moreover by defending, Liberty was doing no more than it was obligated to do under its insurance contract with Sloan. Under general principles of contract law, no right to recovery exists in such a situation.

Reversed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.