Cheryl Ann TOBIN, Appellant,

v.

BENEFICIAL STANDARD LIFE IN-SURANCE COMPANY, Appellee.

No. 81–1637.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1982.

Decided April 8, 1982.

James M. Brailsford, III, Columbia, S. C. (Robinson, McFadden, Moore, Pope & Stubbs, Columbia, S. C., on brief), for appellant.

William W. Watkins, Sr., Columbia, S. C. (Michael S. Church, Turner, Padget, Graham & Laney, P.A., Columbia, S. C., on brief), for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and WILKINS *, District Judge.

MURNAGHAN, Circuit Judge:

Thomas R. Tobin was a taxicab driver who, in the course of his employment, was the victim of an armed robbery during which he was fatally wounded. His employer maintained an accident policy naming Tobin as the insured. His widow as beneficiary sought to recover the $20,000 accidental death benefit provided by the policy. The policy also had provisions for compensation of up to $1500 per month for hospital confinement (i.e., a benefit to meet the consequences of a non-fatal incident).

In individualized typing, the Schedule of Benefits was set out. The balance of the policy was printed. Two definitional sections came after the statement of benefits:

"Injury" wherever used in this policy means bodily injury caused by an accident occurring anywhere in the world while this policy is in force and resulting directly and independently of all other causes in loss covered by this policy.

"Hospital" wherever used in this policy . . . .

The remaining pertinent language read:

No benefits are payable under this policy because of injury for which compensation is payable under any Workmen's Compensation Law or any Employer's Liability Act.

TEN DAY REVIEW

The Insured has ten days after delivery of this policy to him in which to review it and if not satisfied with it for any reason may return it to the Company's Home Office at Los Angeles, California, or to any of its Branch Offices, or to the agent through whom it was purchased for full refund.

PART 1.—ACCIDENTAL DEATH BENEFIT

If the Insured shall suffer injury and if injury shall result in loss of life of the Insured within the first ninety days after the date of the accident, the Company will pay the Accidental Death Benefit stated in the Schedule.

PART 2.—MONTHLY HOSPITAL CONFINEMENT BENEFIT

* The Honorable William W. Wilkins, Jr., United States District Judge for the District of South Carolina, sitting by designation.

608

If the Insured shall be confined to a hospital as a result of injury and if such confinement commences within thirty days of the accident causing the injury, the Company will pay monthly to the Insured the Monthly Hospital Confinement Benefit stated in the Schedule for the period the Insured is so confined beginning with the first day of confinement but not to exceed twelve consecutive months for any one accident.

. . . .

PART 4.—EXCLUSIONS

This policy does not cover any loss, fatal or non-fatal, caused by or resulting from: (1) intentionally self-inflicted injury or suicide or any attempt thereat while sane or insane; (2) declared or undeclared war or any act thereof; (3) service in the armed forces of any country; (4) injury while participating in any speed contest or in professional athletics; (5) injury while riding on or driving a motorcycle; (6) hernia (inguinal, umbilical or femoral); (7) service, travel or flight in any kind of aircraft, except riding as a passenger and not as a pilot or crew member, in or on, boarding or alighting from, or being struck by any aircraft operated by an established concern organized to operate an airplane service and which aircraft is licensed for the transportation of passengers for hire.

The district judge determined that there were no disputes of fact, and that the case, consequently, was ripe for summary judgment. He held that there was no coverage for accidental death benefits in the circumstances of the case because Tobin sustained an injury "for which compensation is payable under any Workmen's Compensation Law or any Employer's Liability Act." We disagree and reverse. That course seems plainly indicated. Our only difficulties, if such is the appropriate term, stem from uncertainty as to which of two alternative routes to decision we should rely on.

■ First, the general interpretive rules, in South Carolina as elsewhere, applicable to insurance policies are well established, and not in question:

1) Insurance policies are subject to general rules of contract construction. Courts must enforce, not write, contracts of insurance and their language must be given its plain, ordinary and popular meaning. *E.g., Sloan Construction Co. v. Central Nat. Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977).

2) While an insurance contract is to be construed liberally in favor of the insured and strictly against the insurer, nevertheless, in the absence of ambiguity, the policy is to be interpreted according to the plain ordinary meaning of the words by which the parties chose to contract. *Deese v. American Bankers Life Assurance Co. of Florida*, 263 S.C. 160, 208 S.E.2d 736 (1974).

3) An insurance policy's terms must be construed most liberally in favor of the insured, and if the language is ambiguous, or capable of two reasonable interpretations, the construction most favorable to the insured should be adopted. *Pitts v. Glen Falls Indemnity Co.*, 222 S.C. 133, 72 S.E.2d 174 (1952).

The question resolves itself, therefore, simply into whether, on the issue of the extent of coverage, there is ambiguity. We find ambiguity to be present. It is customary to differentiate between injury and death. Newspaper or other reports of accidents or of conflicts commonly differentiate between the number killed and the number injured. That common usage is reinforced by the consideration that the policy is careful to preserve the difference. In PART 1.—ACCIDENTAL DEATH BENEFIT, the policy in speaking of injury is careful to add "and if injury shall result in loss of life of the Insured," indicating that injury standing alone would not extend to a fatal injury. Similarly, in PART 4.—EXCLUSIONS, the policy is careful to state that exclusions extend to losses "fatal or non-fatal" falling within the seven described sets of circumstances. None of those seven circumstances extends to death through felony murder.

■ The language relied on by the insurance company and accepted by the court to

deny the accidental death benefit to the widow of the insured provides that benefits are not payable "because of injury for which compensation is payable under any Workmen's Compensation Law or any Employer's Liability Act." It is quite ambiguous whether "injury" extends to fatal injury. It is quite conceivable that the exclusionary language is intended to cover compensation payable only to the named insured, or to relate only to hospital confinement benefits. Hence, it is a reasonable reading of the policy, taken as a whole, that the accidental *death* benefit, payable not to the named insured but to the beneficiary, his widow, is not within the language denying benefits payable because of *injury* for which compensation is payable under any Workmen's Compensation Law or any Employer's Liability Act.

While a contrary interpretation may be erected from the language defining "injury" as "bodily injury . . . resulting . . . in loss covered by this policy," such a competing interpretation is only that. The ambiguity remains. It is not the law that an interpretation unambiguously permitting recovery must be shown before the insurer is liable. Rather it suffices that uncertainty exists. We have here such uncertainty, especially in light of other policy provisions, as to whether the definition of "injury" includes or excludes fatal injuries.

Second, Section 38–35–420, Code of Laws of South Carolina (1976), contains the following provisions:

> No policy of accident and health insurance shall be delivered or issued for delivery to any person in this State unless:
>
> . . . .
>
> (5) The exceptions and reductions of the indemnity are set forth in the policy and . . . are printed, at the insurer's option, either included with the benefit provision to which they apply or under an appropriate caption such as "EXCEPTIONS" or "EXCEPTIONS AND REDUCTIONS"; *provided,* that if an exception or reduction specifically applies only to a particular benefit of the policy, a statement of such exception or reduction shall be in-

cluded with the benefit provision to which it applies;

> . . . .

To us it appears highly probable that the asserted lack of an obligation to pay the $20,000 for accidental death amounts to an exception or reduction of the benefit set forth in the policy.

The policy early on states in bold, typewritten terms that a benefit for accidental death is payable. Then come the definitions of "Injury" and of "Hospital." Separated by the two definitions, the language denying benefits for injury compensated under any Workmen's Compensation Law or any Employer's Liability Act does not appear to us to be included with the benefit provision. Indeed, there is further separation on the other end. After the language on which the insurer's whole case is based comes a paragraph headed "TEN DAY REVIEW" before a separate PART 1. It is devoted to an explanation of the terms and conditions of payment of the ACCIDENTAL DEATH BENEFIT. Indisputably the words on which the insurer relies do not fall within the language of PART 4.—EXCLUSIONS. Consequently, if it were necessary for disposition of the case, we would be strongly inclined to hold that the statutory provisions precluded the effect claimed by the insurer for the language:

> No benefits are payable under this policy because of injury for which compensation is payable under any Workmen's Compensation Law or any Employer's Liability Act.

However, we are mindful of the deference due by us to state court decisions as to the law applicable in diversity actions. The first route to decision outlined above requires no determination of a novel point of South Carolina law. Rather, it involves only a standard application of a well-established principle. The second route, however, would involve us in what in the circumstances appears an unnecessary voyage of discovery as to the meaning and extent of application of a South Carolina statute, § 38–35–420. We confine our decision, therefore, to the first of the two alterna-

tives.[1] We therefore reverse and remand for disposition of the unresolved questions which remain outstanding.

1. See Wright and Pierce v. Town of Wilmington, Massachusetts, 290 F.2d 30, 31–32 (1st Cir. 1961), a diversity case, where a decision below was reached through interpretation of a state statute. In affirming, the First Circuit preferred to rely on a common law ground, stating:

The statute relied upon by the court is not happily drawn, and its construction and application admit of some complexities. As a federal court, we prefer not to interpret it, if it is not necessary to do so, and we believe it is not.
(Citations omitted).