28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
THE TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellee,
v.
William L. KINNEY, Jr., Defendant-Appellant.
 No. 93-2308.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 14, 1994.
Decided: June 20, 1994.
 
 1
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., District Judge. (CA-93-55-3-17)
 
 
 2
 Harry Roberson Easterling, Sr., Goldberg & Easterling, P.A., Bennettsville, South Carolina, for Appellant.
 
 
 3
 John Bowman McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, South Carolina, for Appellee.
 
 
 4
 Thornwell F. Sowell, Jeffrey A. Jacobs, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for Appellant.
 
 
 5
 D.S.C.
 
 
 6
 AFFIRMED.
 
 
 7
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 HARVEY, Senior District Judge:
 
 8
 The sole issue before us in this appeal concerns the interpretation of certain liability insurance policies. For the reasons stated, we affirm the Order of the district court granting summary judgment in favor of the insurer.
 
 
 9
 * Appellee Travelers Indemnity Company (Travelers) filed a declaratory judgment action in the United States District Court for the District of South Carolina seeking a declaration of its rights under various liability insurance policies which it had issued to appellant William L. Kinney, Jr. Kinney answered the complaint and filed a counterclaim which sought a declaration that Travelers had a duty to defend and indemnify him with respect to a suit brought against him by the Resolution Trust Corporation (RTC).
 
 
 10
 During the 1980s, Kinney was a member of the Board of Directors of Security Federal Savings & Loan Association (Security Federal), a federally chartered savings and loan association located in Columbia, South Carolina.[1] Security Federal failed and was placed into receivership in 1989, and the RTC was appointed as its receiver. On November 25, 1992, the RTC sued in federal court a number of the former directors and officers of Security Federal, including Kinney. The complaint in that suit alleged that Kinney and the other defen dants had breached their fiduciary duties to Security Federal and had negligently allowed Security Federal to make high-risk loans. Because of losses on the high-risk loans which were suffered by Security Federal and which were allegedly caused by defendants' wrongful acts, the RTC sought to recover some $45.8 million from Kinney and the other defendants.
 
 
 11
 During the years from 1985 to 1993, Travelers had issued to Kinney eight so-called "Catastrophe Umbrella" policies. These policies, inter alia, provided excess coverage for Kinney's liability because of bodily injury, property damage, personal injury, medical injury or advertising injury. Only the property damage provisions of these policies are at issue in this appeal.
 
 
 12
 The policies in effect from April 1, 1985 to January 1, 1990 provided that Travelers would "indemnify the Insured for all sums in excess of the deductible amount which the Insured shall become legally obligated to pay as damages because of injury to which this policy applies." These policies further provided that "the injuries" covered included:
 
 
 13
 2. Property Damage--which means (a)physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and (b)the loss of use of tangible property which has not been physically injured or destroyed if such loss of use is caused by an occurrence during the policy period.
 
 
 14
 The policies in effect from January 1, 1990 to January 1, 1993 provided that Travelers would pay on behalf of the insured excess sums which the insured would become legally obligated to pay "as damages because of 'injury' to which this policy applies." Property damage was listed as an injury to which coverage would apply, and "property damage" was defined in these policies as:
 
 
 15
 (1) physical injury to tangible property, including all resulting loss of use of that property; or (2) loss of use of tangible property that is not physically injured.
 
 
 16
 A similar policy in effect for the period from January 1, 1992 to January 1, 1993 defined "property damage" as
 
 
 17
 (1) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 
 
 18
 (2) Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.
 
 
 19
 Shortly after suit was brought against him by the RTC, Kinney tendered the defense of that action to Travelers. Travelers denied coverage and sought in the civil action filed against Kinney in the district court a declaration of its rights and obligations under the various insurance polices. Claiming that it had no duty under the policies at issue to defend or to indemnify Kinney because the suit brought by the RTC did not involve "a loss of use of tangible property," Travelers moved for summary judgment. In an Order entered on December 2, 1993, the district court granted Travelers' motion for summary judgment.[2] We affirm.
 
 II
 
 20
 The narrow issue here is whether the claims asserted by the RTC against Kinney involve a property damage injury. In each of the policies at issue, "property damage" was defined as requiring a physical injury to or loss of use of "tangible property." The complaint filed by the RTC in its suit against Kinney and other officers of Security did not seek damages based upon the destruction of or loss of use of any tangible property. The damages sought by the RTC allegedly were caused by defaults in high-risk loans arranged or approved by Secur ity Federal's directors and officers. Intangible economic loss rather than tangible property loss formed the basis for the RTC suit.
 
 
 21
 In the absence of ambiguity, an insurance policy is "to be interpreted according to the plain, ordinary meaning of the words by which the parties chose to contract." Tobin v. Beneficial Standard Life Ins. Co., 675 F.2d 606, 608 (4th Cir.1982) (applying South Carolina law). Under South Carolina law, the plain and ordinary meaning of terms used in a contract of insurance may be obtained by reference to standard dictionaries. See Stevenson v. Connecticut General Life Ins. Co., 265 S.C. 348 (1975). The term "tangible property" has been defined as "property that has physical form and substance." Black's Law Dictionary 1456 (6th Ed.1990). As the Court said in United States Fidelity and Guaranty Co. v. Barron Industries, Inc., 809 F.Supp. 335, 360 (M.D. Pa.1992):
 
 
 22
 Moreover, the term "property damage" is qualified by the term "tangible." Thus, the definition contemplates only property damage which is physical, capable of being touched and objectively perceivable and not intangible property, such as property that represents value but has no intrinsic marketable value of its own, (i.e., stock, investments, copyrights, promissory notes), property regarded as intangible rights (i.e., goodwill in reputation), and economic interests (i.e., overhead, profits, investment value and productivity).
 
 
 23
 Similarly, in Travelers Indemnity Co. v. Arizona, 680 P.2d 1255 (Ariz. Ct. of App.1984), the Court held that losses suffered by investors in a failed thrift association constituted intangible property. In a case involving the construction of a liability policy similar to those at issue here, the Court concluded that it would do violence to the plain language of the insurance contract at issue to construe the term "tangible property" as including intangible economic interests. As the Court noted, "there is neither injury to nor destruction of the actual money invested." 680 P.2d at 1257.
 
 
 24
 Other courts have reached similar conclusions. In Hommel v. George, 802 P.2d 1156 (Colo. Ct. of App.), cert. denied (Colo. Dec. 17, 1990), the plaintiffs suffered losses as investors in a partner ship formed to develop condominiums. They argued that coverage was available under the liability policy's definition of "property damage" which included "loss of use of tangible property." The Court held that the plaintiffs were not claiming loss of the condominiums but were seeking a recovery for their lost investment in their limited partnership interests. The Court determined that plaintiffs had not suffered a loss of use of tangible property and held that there was no coverage under the policy at issue. Id. at 1158-1159. Decisions reaching substantially the same result include the following: Lowenstein Dyes & Cosmetic, Inc. v. Aetna Life & Cas. Co., 524 F.Supp. 574, 577 (E.D.N.Y.1981), aff'd, 742 F.2d 1437 (2d Cir.1983) (business losses are not injury to or loss of tangible property); Liberty Mut. Ins. Co. v. Consolidated Milk Producer's Ass'n., 354 F.Supp. 879, 882 (D.N.H.1973) (natural and ordinary meaning of property damage does not include business losses).
 
 
 25
 Appellant argues that money which was lost by Security Federal and which was allegedly caused by Kinney's wrongful acts constituted discrete tangible property. No case has been cited by appellant which has construed the term "tangible property" in a liability policy as including economic loss of the sort involved here. The injury here resulted from high-risk loans which defaulted. No physical injury to any tangible property was involved. These liability policies therefore did not require Travelers to defend Kinney in the suit brought against him by the RTC or to indemnify him for any judgment which he might become obligated to pay.
 
 III
 
 26
 Because the RTC suit brought against Kinney did not seek damages based on a physical injury to or a loss of use of tangible property having form and substance, we conclude that coverage was not afforded under the policies at issue. We accordingly affirm the district court's Order granting Travelers' motion for summary judgment.
 
 AFFIRMED
 
 
 [1]
 Kinney was a director of Security Federal from 1984 until 1989
 
 
 [2]
 Based on the existence of diversity jurisdiction, the district court construed the provisions of the policies under South Carolina law