**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1215**

JESSCO, INC.,

              Plaintiff - Appellee,

        v.

BUILDERS MUTUAL INSURANCE COMPANY,

              Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, Senior
District Judge.  (2:08-cv-01759-PMD)

Argued:  January 25, 2012          Decided:  March 29, 2012

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

Stephen Peterson Groves, Sr., NEXSEN PRUET, Charleston, South
Carolina, for Appellant.  Steven Lewis Smith, SMITH & KOONTZ,
PA, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this declaratory judgment action, Builders Mutual Insurance Company ("BMIC") appeals the district court's determination that it had a duty to defend and a duty to indemnify under an insurance policy (the "Policy") issued by BMIC to Jessco, Inc. We conclude that BMIC had a duty to defend Jessco, but we also conclude that the policy did not provide coverage for the $10,000 re-grading allowance paid by Jessco to the homeowners in the underlying construction-defect action. We therefore affirm in part, reverse in part, and remand.

I.

Glenn and Tracie Mazyck hired Jessco to build a house for them in North Charleston's Coosaw Creek subdivision. Shortly after moving into the house in September 2004, the Mazycks provided Jessco with a punch list of mostly minor items to be completed or repaired. The punch list matters were not resolved to the Mazycks' satisfaction, and in February 2005, they filed suit against Jessco in state court. The complaint alleged, among other things, that the lot flooded because it was not graded properly to direct surface water into the wetlands area adjacent to the lot. In May 2006, the state-court action was stayed so the claims could be pursued through arbitration, as required by the contract. In the fall of 2007, experts hired by

2

the Mazycks identified substantial water damage to the house caused by the flooding of the property. The experts believed the problems were so severe that the best solution was to demolish the house and re-build on a re-graded lot.

In October 2007, after the escalation in the Mazycks' demands, Jessco finally notified BMIC of the underlying claims. BMIC concluded that the Mazycks' claims were not covered by the Policy and that Jessco failed to promptly notify BMIC of the lawsuit, and BMIC therefore refused to defend Jessco against the Mazycks' claims or to indemnify Jessco for any damages paid to the Mazycks. Jessco thereafter filed a declaratory judgment action in state court seeking a declaration that the claims in the underlying action were covered by the Policy. BMIC removed the action to federal court and counterclaimed, seeking a declaration that it was not obligated under the Policy to defend or indemnify Jessco.

The arbitration hearing on the Mazycks' claims was conducted over several days in October and December 2008. The arbitrator issued his award in April 2009, ordering Jessco to pay almost $55,000 in damages for various items that were in need of repair or completion. As to the flooding issue, the arbitrator relied on the testimony of the Mazycks' experts to conclude that the flooding was proximately caused by "the overcapacitation of the wetlands, caused by the overall design

3

and development of the surrounding neighborhood." J.A. 265. Although the arbitrator specifically found that Jessco's work was "not the legal proximate cause of the flooding of [the Mazycks'] property," J.A. 265, the award included a $10,000 allowance for re-grading of the lot, which the arbitrator indicated would provide better surface-water management.

After the arbitrator issued his award, BMIC moved for summary judgment in the declaratory judgment action. The district court concluded that while most of the Mazycks' claims did not fall within the scope of the Policy, the flooding-related claims were covered by the Policy. The court rejected BMIC's assertion that Jessco's untimely notice barred recovery under the Policy, and the court therefore concluded that BMIC breached its duty to defend Jessco against the claims. The district court ordered BMIC to pay more than $68,000 in attorney's fees incurred by Jessco in defending against the Mazycks' claims and to reimburse Jessco for the $10,000 re-grading allowance ordered by the arbitrator.

## II.

Commercial general liability ("CGL") insurance policies like the one at issue in this case generally contain two significant coverage provisions: "one, providing for the payment by the insurer of sums the insured shall become obligated to

4

pay, the other providing, in substance, for the defense of any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy." Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha, 236 S.E.2d 818, 820 (S.C. 1977).* "Although these duties are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured." Id. BMIC's challenges on appeal involve both the duty to defend and the duty to indemnify Jessco.

## A. Duty to Defend

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally "are determined by the allegations of the complaint. If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted). Although the duty to defend typically is determined by the allegations of the underlying complaint, "an insurer's duty to defend is not

---

\* A federal court sitting in diversity must apply the choice-of-law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The parties agree that South Carolina law governs this dispute.

5

strictly controlled by the allegations in [the c]omplaint. Instead, the duty to defend may also be determined by facts outside of the complaint that are known by the insurer." USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008).

(1)

The Policy provides coverage for sums Jessco becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" to which the insurance applies. J.A. 75. The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and as "[l]oss of use of tangible property that is not physically injured." J.A. 87. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 87.

BMIC does not dispute on appeal that the allegations of the Mazycks' complaint raised the possibility of "property damage" caused by an "occurrence" within the meaning of the Policy. See Horry Cnty. v. Insurance Reserve Fund, 544 S.E.2d 637, 641 (S.C. Ct. App. 2001) (concluding that flooding of land was "within the ordinary meaning of physical injury to property" and that damages caused by flooding were thus "clearly within the definition of property damage"); Auto Owners Ins. Co. v. Newman, 684 S.E.2d 541, 544-45 (S.C. 2009) (concluding that "continuous moisture intrusion" causing damage to property other than the

6

insured's work constitutes an occurrence). Instead, BMIC contends that it had no duty to defend because coverage for the Mazycks' claims was excluded by the Policy's "your work" exclusion. See Clegg, 661 S.E.2d at 797 ("[A]n insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." (internal quotation marks omitted)).

The exclusion upon which BMIC relies is a standard exclusion in CGL policies that excludes from coverage any claims for "'[p]roperty damage' to 'your work' arising out of it or any part of it." J.A. 78. The Policy defines "your work" as "[w]ork or operations performed by you or on your behalf," J.A. 88, a definition broad enough to encompass and thus preclude coverage for work done by the insured's subcontractors. See French v. Assurance Co. of Am., 448 F.3d 693, 700-01 (4th Cir. 2006). Many CGL policies have an exception to the your-work exclusion that restores coverage for damage to work performed by a subcontractor. See id. at 701; see also Newman, 684 S.E.2d at 546 ("[T]he subcontractor exception preserves coverage for property damage that would otherwise be excluded as 'your work' . . . ."). In this case, however, the Policy contains an endorsement that removes the subcontractor exception. According to BMIC, that endorsement "completely eliminated all liability insurance coverage to Jessco for any work done by or on its

7

behalf by one or more of Jessco's subcontractors." Brief of Appellant at 14. BMIC contends that all of the work on the property was done by subcontractors on Jessco's behalf and that the your-work exclusion therefore bars coverage for all of the claims asserted by the Mazycks. We disagree, albeit for reasons other than those set out by the district court. See McMahan v. Iron Workers Union Local 601, 964 F.2d 1462, 1467 (4th Cir. 1992) ("We of course have the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not addressed below.").

"The primary purpose of [the your-work] exclusion is to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business." Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:17 (3d ed.). Contrary to BMIC's argument, however, the exclusion does not withdraw coverage for any and all work done by the insured or its subcontractors; it withdraws coverage in cases where the insured causes property damage to work done by the insured or its subcontractors: "By its plain language, the 'your work' exclusion only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship. It does not exclude coverage for damage to a third party's work." Limbach Co. v. Zurich Am. Ins. Co., 396 F.3d 358, 365 (4th Cir. 2005) (per curiam); see also Couch on

8

Insurance § 129:17 ("[W]here all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the 'your work' exclusion will apply to preclude coverage."). Accordingly, the Policy's elimination of the subcontractor's exception means that Jessco's subcontractors will not be viewed as third-parties for purposes of determining whose "work" was damaged, but the elimination of the exception does not, as BMIC contends, preclude coverage if Jessco's work in fact damages the work of a third party.

The question, then, is whether the Mazycks' claims against Jessco created a possibility that a third-party's work or property was damaged by the faulty workmanship of Jessco or its subcontractors. We believe that question must be answered in the affirmative. The contract between Jessco and the Mazycks specifically contemplated that Glenn Mazyck would perform some of the work, and Mazyck himself installed (or hired a subcontractor to install) the flooring and landscaping. The lot-flooding claim first asserted by the Mazycks thus created a possibility of damage to the landscaping, which was Glenn Mazyck's work, not Jessco's. See Limbach, 396 F.3d at 365 ("Since the landscaping and concrete work were performed by third parties, the 'your work' exclusion does not preclude coverage for the costs of repairing and replacing the landscaping and concrete."). And when the Mazycks' claims

9

expanded to include water damage to the house itself, those claims likewise raised the possibility of damage to Glenn Mazyck's work.  Accordingly, we reject BMIC's claim that the your-work exclusion barred coverage for the claims asserted by the Mazycks.

(2)

The Policy requires Jessco to notify BMIC of claims or lawsuits brought against it "as soon as practicable."  J.A. 83. BMIC contends that even if the Policy otherwise provided coverage, Jessco lost its right to coverage by waiting more than two years to give notice of the Mazycks' lawsuit.

Although Jessco contends that it notified BMIC as soon as it became apparent that the Mazycks' claims might be covered, we will assume for purposes of this opinion that the notice was untimely.  Under South Carolina law, however, recovery under the Policy is barred only if BMIC proves that it was substantially prejudiced by the late notice.  See Vermont Mut. Ins. Co. v. Singleton, 446 S.E.2d 417, 421 (S.C. 1994) ("Where the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights."); Squires v. National Grange Mut. Ins. Co., 145 S.E.2d 673, 677 (S.C. 1965) ("The burden of proof is upon the insurer to show not only that the insured has failed to perform the

10

terms and conditions invoked upon him by the policy contract but in addition that it was substantially prejudiced thereby.").

On appeal, BMIC asserts that the delay in notification "substantially prejudiced [its] ability to investigate, manage, handle, and/or settle the Mazycks' claims." Brief of Appellant at 27. BMIC, however, presented no evidence of prejudice to the district court, and it makes no effort to even explain to this court how it was prejudiced by the delay even though it had notice of the claims more than a year before the arbitration hearing took place. Because prejudice to the insurer may not be presumed, see Vermont Mut., 446 S.E.2d at 422, BMIC's unsupported assertion of prejudice is insufficient to establish that it was substantially prejudiced by Jessco's delay in notification. The district court therefore properly rejected BMIC's assertion that Jessco's delay in notification precluded recovery under the Policy.

(3)

We turn briefly to the question of damages for BMIC's breach of its duty to defend. The district court ordered BMIC to pay more than $68,000 in legal fees incurred by Jessco in defending itself against the Mazycks' claims and in prosecuting the declaratory judgment action. See Unisun Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182, 186 (S.C. Ct. App. 1993) ("An insurer that breaches its duty to defend and indemnify the

11

insured may be held liable for the expenses the insured incurs in providing for his own defense.").

In the statement of the issues on appeal included in its brief, BMIC lists ten issues, including two challenges to the attorney's fee award. In the body of its brief, however, BMIC substantively addresses only three issues, none of which include a challenge to the fee award independent from the merits of the underlying duty-to-defend issue. That is, while BMIC argues that the entire damage award must be set aside because the your-work exclusion precluded coverage for all claims, BMIC does not alternatively argue that, even if it had a duty to defend, the award of fees as damages, or the amount of fees awarded, was improper. Under these circumstances, BMIC has abandoned any challenge to the attorney's fee award by failing to substantively address it in brief. See, e.g., Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 607 (4th Cir. 2009) ("Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief must contain the 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' Because Wahi has failed to comply with the specific dictates of Rule 28(a)(9)(A), we conclude that he has waived his claims . . . ."); Williams v. Giant Food Inc., 370 F.3d 423, 430 n.4 (4th Cir. 2004) ("Williams makes no

12

argument in her brief to support this assertion, and we deem it abandoned on appeal.").

## B. Duty to Indemnify

While the duty to defend exists where there is a possibility of a covered claim, an insurer is obligated to indemnify the insured only for claims that in fact fall within the scope of the coverage provided by the policy. On appeal, BMIC contends that the $10,000 re-grading allowance was not compensation for loss caused by a covered risk and that the district court therefore erred by requiring it to indemnify Jessco for the re-grading allowance.

Resolution of this issue requires us to determine the legal basis for the re-grading allowance ordered by the arbitrator. In their state-court action, the Mazycks asserted contract- and negligence-based claims against Jessco. If the re-grading allowance was awarded by the arbitrator as compensation for negligence by Jessco in grading the property, Jessco's negligence would constitute an "occurrence" and the Policy would provide coverage.

Although the arbitrator stated that Jessco and the Mazycks both "b[ore] some responsibility for the flooding," J.A. 262, the arbitrator ultimately determined that the flooding was caused by "the overcapacitation of the wetlands, caused by the overall design and development of the surrounding neighborhood,"

13

J.A. 265.  The arbitrator concluded that the development and overcapacitation was "an unforeseen intervening cause," and Jessco's work was "not the legal proximate cause of the flooding of [the] property."  J.A. 265.

The arbitrator's determination that Jessco's work was not the proximate cause of the flooding necessarily amounted to a rejection of any negligence-based claim asserted against Jessco. See, e.g., Hurd v. Williamsburg Cnty., 579 S.E.2d 136, 144 (S.C. Ct. App. 2003) ("It is apodictic that a plaintiff may only recover for injuries proximately caused by the defendant's negligence.").  While there may have been some negligent conduct by Jessco, the proximate-cause determination means that Jessco could not have been held accountable to a third-party for that negligence.  See, e.g., Howard v. Riddle, 221 S.E.2d 865, 866 (S.C. 1976) ("Plaintiff must show, as a matter of law, not only that defendant was negligent but also that his negligence was a contributing or proximate cause of the injury . . . ." (internal quotation marks omitted)).

Because there was no actionable negligence on the part of Jessco, the re-grading allowance could only have been awarded as compensation for a breach of contract.  The Policy, however, unambiguously excludes coverage for breach-of-contract damages, see J.A. 76, and BMIC therefore had no obligation to indemnify Jessco for the re-grading allowance paid to the Mazycks.

14

## III.

For the foregoing reasons, we hereby affirm the district court's judgment and damages awarded with regard to the duty-to-defend issue. The district court erred, however, in concluding that BMIC was obligated to indemnify Jessco for the $10,000 re-grading allowance paid to the Mazycks. Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>