482 S.E.2d 768

**TOWN OF DUNCAN, Appellant,**

v.

**STATE BUDGET AND CONTROL BOARD, DIVISION OF INSURANCE SERVICES; Barry Ray Frost; William Thomas Kuehne; and Mark W. Holden, Respondents.**

No. 24584.

Supreme Court of South Carolina.

Heard Nov. 21, 1996.

Decided March 3, 1997.

Rehearing Denied April 2, 1997.

8

Edward R. Cole, Spartanburg, for appellant.

Reginald L. Foster, Spartanburg, for respondent State Budget and Control Board.

WALLER, Justice:

On appeal is an order finding Respondent State Budget and Control Board ("Board") does not have a duty to defend or indemnify Appellant Town of Duncan ("Town") against two lawsuits. We reverse.

## FACTS

In January of 1993 two complaints were commenced against Town. Both alleged the plaintiffs therein[1] were fired in retaliation for reporting various acts of misconduct by Town's mayor and for being involved in the mayor's arrest for public disorderly conduct and resisting arrest.[2] Plaintiffs alleged causes of action for (1) violation of the state "Whistleblower Act,"[3] (2) intentional infliction of emotional distress, and (3) tortious conduct resulting in a chilling effect on equal enforcement of state laws.

Town was insured under a tort liability policy issued by Board. However, upon notification of the two suits, Board refused to defend or indemnify on the ground that the causes of action alleged were not covered under the insurance policy. Town brought a declaratory judgment action against Board to have the rights and obligations of the parties under the insurance policy determined.[4] The trial judge found the policy did not provide coverage for any of the causes of action

1. One plaintiff was employed by the fire department; the other two were employed by the police department. Hereinafter they will be referred to as "Plaintiffs."

2. Plaintiffs were discharged four days after the mayor's arrest.

3. S.C.Code Ann. §§ 8–27–10 to –50 (Supp.1995).

4. Town also named Plaintiffs as defendants, but they failed to make an appearance below.

10

alleged in the complaint.[5]

## ISSUE

Does the insurance policy provide coverage for the plaintiffs' lawsuit?

## DISCUSSION

■ Board issued Town a general "Tort Liability Insurance Policy," the pertinent provisions of which are quoted below:

## I.

## COVERAGE

The Fund [6] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. Personal injury ... to which this applies caused by an occurrence....

The Fund shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury ... even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

## III.

## DEFINITIONS

"*Personal Injury*" means

(2) injury arising out of one or more of the following offenses committed during the policy period:

---

**5.** Town has not appealed the judge's finding regarding the third cause of action, damages arising from violation of public policy.

**6.** "Fund" is Board's Insurance Reserve Fund.

(a) false arrest, detention, imprisonment, malicious prosecution, or humiliation [7];

(g) violation of the following Amendments to the Constitution of the United States:

First Amendment

The primary cause of action Plaintiffs alleged is violation of the Whistleblower Act. This statute generally prohibits any public body from retaliating against an employee who reports wrongdoing. The trial judge found that because the Whistleblower Act is not within the purview of the Tort Claims Act [8], the policy did not provide coverage. In other words, the judge found the policy only covered claims for which immunity was waived under the Tort Claims Act. We disagree.

Prior to 1985, governmental entities were protected from lawsuits alleging tortious conduct by its employees by the doctrine of sovereign immunity. However, in that year we abolished total sovereign immunity in *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985). In response to *McCall*, the legislature passed the Tort Claims Act, which waived sovereign immunity under certain circumstances. This Act mandated that all political subdivisions [9] procure tort liability insurance to cover risks for which immunity was waived. S.C.Code Ann. § 15–78–140(b) (Supp.1995). The Act made it the "duty of the [Board] to cover risks for which immunity has been waived under the provisions of this chapter by the purchase of insurance as authorized in § 15–78–150." *Id.* at § 15–78–140(a).

Initially, the trial judge correctly found that the Tort Claims Act does not address actions under the Whistleblower Act. *See McGill v. University of South Carolina*, 310 S.C. 224, 423 S.E.2d 109 (1992). However, this does not resolve the issue at hand, that being whether the tort liability policy Board issued in this case only provided coverage for actions under the Tort

7. An endorsement to the policy further limited humiliation to only "humiliation resulting from false arrest, detention, imprisonment or malicious prosecution."

8. S.C.Code Ann. §§ 15–78–10 to –190 (Supp.1995).

9. The parties stipulated Town was a political subdivision at all times material to this case.

Claims Act.[10] At first blush the answer to this question may seem obvious. *See* S.C.Code Ann. § 15–78–20(b) (Supp.1995) (governmental liability can only be based as provided in Act). However, the Whistleblower Act, which was passed two years after the Tort Claims Act, specifically waives governmental immunity for Whistleblower claims. *See* S.C.Code Ann. § 8–27–30 (Supp.1995). Clearly, this later specific statute is another area in which the legislature has decided to waive governmental immunity in addition to the waiver provisions of the Tort Claims Act. *See Langley v. Pierce*, 313 S.C. 401, 438 S.E.2d 242 (1993) ("generally, specific laws prevail over general laws, and later legislation takes preference over earlier legislation").

█ The statutes authorizing Board to purchase insurance for governmental entities do not provide that the *only* risks Board can insure against are those waived under the Tort Claims Act. While section 15–78–140(a) (quoted above) states it is Board's duty to insure against risks waived under the Tort Claims Act, it does not make this an exclusive duty.[11] Furthermore, section 1–11–140(A) authorizes Board to provide insurance "so as to protect the State against tort liability." The Tort Claims Act is not mentioned.

█ Finally, the actual policy never mentions the Tort Claims Act. It merely states that the Fund will (1) pay sums the insured becomes legally obligated to pay as damages because of personal injury, and (2) defend any suit seeking such damages even if the allegations are groundless, false or fraudulent. There is no provision limiting coverage to claims allowed under the Tort Claims Act. Therefore, Board's duty to defend or indemnify should not be predicated on whether the Whistleblower action is covered by the Tort Claims Act.

---

**10.** Whistleblower actions are clearly actions in tort. *See, e.g., Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995).

**11.** While a governmental entity seeking insurance coverage for claims addressed by the Tort Claims Act do not necessarily have to purchase insurance from Board, *see* S.C.Code Ann. § 15–78–140(b) (Supp.1995), this is not the case with other areas of potential liability. *See* S.C.Code Ann. § 1–11–140(C) (Supp.1995) ("The procurement of tort liability insurance in the manner provided [i.e. from Board] is the exclusive means for the procurement of this insurance").

Rather, the policy itself should be examined to see whether coverage is provided by its terms.[12]

Terms in an insurance policy should be liberally construed in favor of the insured. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). The allegations in the third-party complaint determine the insurer's duty to defend. If the facts alleged in a complaint against the insured bring a claim within policy coverage, the insurer has a duty to defend. *South Carolina Medical Malpractice Liab. Ins. v. Ferry*, 291 S.C. 460, 354 S.E.2d 378 (1987).

Town argues the policy covers Whistleblower actions because it defines personal injury as an injury arising out of a violation of the First Amendment. We agree. The phrase "arising out of" should be broadly construed in a clause of inclusion; it should mean more than causation. *See McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 426 S.E.2d 770 (1993) ("arising out of" in clause of inclusion connotes "incident to," "flowing from," or "having connection with" as well as "causal relation to."). We find that, for the purpose of determining the coverage issue in this case, a cause of action under the Whistleblower Act is an action for injuries arising out of a First Amendment violation.

An action for violation of a plaintiff's First Amendment rights based on retaliatory discharge requires a showing that (1) the plaintiff's speech is protected by the First Amendment, meaning (a) the speech involves a matter of public concern and (b) the employee's interest in speaking outweighs the employer's interest in promoting office efficiency; and (2) the plaintiff's speech was a substantial motivating factor in the government action. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Sch. Dist. v.*

---

12. Town argues the policy covers Whistleblower actions because it defines personal injury in part as injury arising out of malicious prosecution. We disagree. These two actions are completely different; the facts alleged in the complaint simply do not allege malicious prosecution. *See Jordan v. Deese*, 317 S.C. 260, 452 S.E.2d 838 (1995) (malicious prosecution action lies when judicial proceedings are instituted by defendants which end in plaintiff's favor, such institution being motivated by malice and lacking probable cause).

*Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The First Amendment insures that public employers do not fire employees "on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

Under the Whistleblower Act, public employees can recover if they show their employer retaliated against them for filing a well-grounded, good-faith report of wrongdoing with an appropriate authority. S.C.Code Ann. § 8–27–20 (Supp.1995). The employee must show the employer's action was because of the filing, however, and was not motivated by an independent reason. *Id.* at § 8–27–40. While this statute encourages employees to report wrongdoing as a matter of public policy, it does so by protecting their right to speak without fear of retaliation. It is narrower than the protection given by the First Amendment because it only addresses one type of speech: reports of wrongdoing. However, a public employee's reporting of misconduct will always implicate First Amendment protection because it is universally held to be a matter of public concern. *See Pickering, supra; Davis v. Ector County,* 40 F.3d 777 (5th Cir.1994) ("There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light"); *Swineford v. Snyder County,* 15 F.3d 1258, 1274 (3d Cir.1994) ("Speech involving government impropriety occupies the highest rung of First Amendment protection. Moreover, the public's substantial interest in unearthing governmental improprieties requires courts to foster legitimate whistleblowing.").[13]

---

**13.** The one distinction between the First Amendment and the Whistleblower statute is that in the former analysis, the employer is given the opportunity to show that its interest in a workplace free of disruption is greater than the employee's rights to free speech. However, regarding employee reports of misconduct or wrongdoing, the employer's burden is so great as to make this element almost nonexistent. *See Voigt v. Savell,* 70 F.3d 1552 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996) (matters inherently involving public concern make employer's burden very onerous); *Johnson v. Multnomah County,* 48 F.3d 420, 427 (9th Cir.1995), *cert. denied,* 515 U.S. 1161, 115 S.Ct. 2616, 132 L.Ed.2d 858 (employer "does not have a legitimate interest in covering up mismanagement or corruption and cannot

■■■ We find that, construing the policy liberally and considering the great degree of similarity and overlap in statutory and non-statutory Whistleblower actions, coverage should be provided in this case. At best, this language "arising out of a violation of the First Amendment" is ambiguous in this context and should be construed in favor of coverage. *See Nationwide Mut. Ins. Co. v. Simmonds*, 315 S.C. 404, 434 S.E.2d 277 (1993) (rule that ambiguous terms in policy should

justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure"); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1487 (11th Cir.1992), *cert. denied sub nom. Deutcsh v. Oladeinde*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993) (complaint alleging police officers were retaliated against because they sought to expose wrongdoing leads to the "inevitable" conclusion that their First Amendment rights were breached, despite the balancing of interests).

Some courts have blurred this technical distinction even further. For example, in *Lanes v. O'Brien* the Colorado Court of Appeals noted that the balancing element of the First Amendment test was not exactly absent from its Whistleblower statute; instead, its provisions reflected a "legislative" balancing of the employer's and employee's interests. 746 P.2d 1366, 1372 (Colo.Ct.App.1987). It implied that in some cases it would use the test developed by First Amendment cases in analyzing liability under the statute. *Id.*

Other jurisdictions have also impliedly noted the great degree of similarity in the two actions. In determining what is required to state a *prima facie* case under its whistleblower statute, the North Carolina Court of Appeals relied on federal case law regarding a retaliation claim based on a violation of the First Amendment. *Kennedy v. Guilford Tech. Comm. College*, 115 N.C.App. 581, 448 S.E.2d 280 (1994). *See also Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (federal employee who alleges retaliation in violation of First Amendment rights must bring action under statutory civil service remedies provided by Congress instead of in a non-statutory action); *Fiorillo v. United States Dept. of Justice*, 795 F.2d 1544, 1549 (Fed.Cir. 1986) (federal statute prohibiting reprisal against federal employees for disclosing misconduct and First Amendment's right to free speech are "co-extensive rights"); *Crosby v. State Dept. of Budget & Finance*, 76 Hawaii 332, 342, 876 P.2d 1300, 1310 (1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995) (stating, in explaining provisions of state whistleblower statute, "Once the employee shows that the employer's disapproval of his *first amendment protected expression* played a role in the employer's action against him or her, '[t]he employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity.' ") (emphasis added) (internal citation omitted); *Clough v. Ertz*, 442 N.W.2d 798, 804 (Minn.Ct.App.1989) (plaintiff's statutory whistleblower action "factually intertwined" with section 1983 action for violation of First Amendment).

be construed against insurer applies when language used is capable of two reasonable interpretations). As a policy matter, Town should not be denied a defense because plaintiffs seek to vindicate their rights by pursuing an action under the Whistleblower Act instead of in an action more explicitly alleging a First Amendment violation.

Finally, the trial judge also found Board had no duty to defend based on the second cause of action, intentional infliction of emotional distress. Although we agree that the policy does not cover such actions [14], Board is not justified in refusing to defend the lawsuit on this basis. *See Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53 (4th Cir.1952) (where a lawsuit contains several causes of action, some of which are covered under the policy and some of which are not, an insurer is not justified in refusing to defend the entire suit).

It is for these foregoing reasons that we find Board owes a duty to defend or indemnify Town in the lawsuits at issue in this case. The order of the trial judge is hereby reversed and this case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.

---

14. An insurer's duty to defend depends on an initial or apparent potential liability to satisfy a judgment against the insured. *Sloan Const. Co. v. Central National Ins. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977). The plain language of the policy shows coverage is not provided for intentional infliction of emotional distress. We decline to decide this issue based on whether or not the Tort Claims Act has waived sovereign immunity for this cause of action. Sovereign immunity is an affirmative defense that must be pled. *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994). Because obviously no answer has been filed in this case, it would be premature to decide this issue at this time. We reverse the trial judge's order inasmuch as it does so.