677 S.E.2d 574

**CITY OF HARTSVILLE, Respondent,**

v.

**SOUTH CAROLINA MUNICIPAL INSURANCE
& RISK FINANCING FUND, Appellant.**

No. 26625.

Supreme Court of South Carolina.

Heard March 4, 2009.
Re-filed May 18, 2009.

538

J.R. Murphy and Jeffrey C. Kull, both of Murphy & Grant-land, of Columbia, for Appellant.

Martin S. Driggers, of Driggers & Moyd, of Hartsville, for Respondent.

Justice BEATTY.

In this declaratory judgment action, South Carolina Municipal Insurance and Risk Financing Fund (Insurer) appeals the circuit court's order finding the Insurer had a continuing duty to defend the City of Hartsville (City) and ordering it to pay the City the costs it incurred from having to defend against a suit brought by a Hartsville landowner. Pursuant to Rule 204(b), SCACR, this Court certified this appeal from the Court of Appeals. We affirm the decision of the circuit court.

## FACTUAL/PROCEDURAL BACKGROUND

In 1991, Phelix Byrd (Byrd) purchased a 46.358 acre tract of land that lay partly in the City (the City tract) and partly in

Darlington County (the County tract). The property was part of what used to be Coker Farms, a National Historic Landmark (NHL) as designated in 1964 by the National Park Service, a division of the United States Department of the Interior. This NHL designation, however, was never filed in the public records of Darlington County nor was any mention of the designation placed on deeds conveying portions of the Coker Farms properties to subsequent purchasers.

Byrd purchased a portion of the Coker Farms property in order to subdivide it and sell parcels to developers for commercial purposes. In 1998, Byrd approached the City about developing a carwash on a .86 acre parcel of the property located in the City. Because the City tract was zoned for agricultural use, Byrd petitioned the City to rezone it as commercial. Fearing that commercial development of any part of the Coker Farms would lead to the revocation of the NHL designation for all of Coker Farms, the City delayed acting on Byrd's petition.

After being assured that rezoning Byrd's property would not affect the NHL designation, the City rezoned the .86 acre parcel from agricultural to commercial pursuant to a City ordinance in February of 1999. By this time, however, Byrd's potential purchaser had lost the financing necessary to develop the property and, as a result, the sale never closed.

In July 1999, the City passed another ordinance which rezoned as commercial the balance of Byrd's property located within the City.

Shortly thereafter, Byrd entered into contracts to sell parcels of the City tract for development. These sales, however, were not consummated because Darlington County, which maintained the records for both County and City property, would not approve the deeds. The County declined to approve the deeds on the ground the tax records for Byrd's property contained "flags," which stated "N'tl Park Serv. Ord/No Per or Deeds Issued" and, in turn, effectively restricted the issuance of deeds. The County had placed these flags on the tax records for all Coker Farms property in an attempt to protect the NHL designation. The flags were not removed from Byrd's tax records until approximately three years after the City tract had been rezoned.

In 2000, Byrd sued the City and the County, in addition to several other defendants, for damages arising from Byrd's difficulties and delays in being able to commercially develop his Coker Farms properties. In terms of his claims against the City, Byrd specifically pled causes of action for "gross negligence"[1] and "taking or inverse condemnation."

The City, represented by the Insurer,[2] moved for summary judgment on all of Byrd's claims. By order dated February 22, 2002, the circuit court granted the City's motion with respect to Byrd's takings and gross negligence claims. The court, however, denied the motion regarding Byrd's cause of action for inverse condemnation.

On March 28, 2002, the Insurer withdrew its defense of the City on the ground the remaining cause of action against the City for inverse condemnation was specifically excluded under the terms of the liability insurance policy the Insurer issued to the City.[3] The City protested the Insurer's withdrawal and requested that it continue to defend the City due to its concerns that the circuit court could permit Byrd to amend his complaint to add claims covered by the Insurer's liability

---

1. In their briefs, the parties refer to this cause of action as one for negligent misrepresentation. However, a review of the pleadings indicates that Byrd titled this cause of action as "gross negligence."

2. The City procured tort liability insurance from the Insurer in compliance with section 15–78–140 of the South Carolina Code, which provides in pertinent part:

   (b) The political subdivisions of this State, in regard to tort and automobile liability, property and casualty insurance shall procure insurance to cover these risks for which immunity has been waived by (1) the purchase of liability insurance pursuant to § 1–11–140; or (2) the purchase of liability insurance from a private carrier; or (3) self-insurance; or (4) establishing pooled self-insurance liability funds, by intergovernmental agreement, which may not be construed as transacting the business of insurance or otherwise subject to state laws regulating insurance.

   S.C.Code Ann. § 15–78–140(b) (2005).

3. The following provision is listed under the exclusions section of the liability policy:

   *Inverse Condemnation*
   Inverse condemnation, condemnation, temporary taking, permanent taking, or any claim arising out of or in any way connected with the operation of the principles of eminent domain; adverse possession or dedication by adverse use.

policy. Despite this protest, the Insurer denied its duty to defend but indicated that it would reconsider its position in the event Byrd was permitted to reinstate the negligence cause of action. After the Insurer withdrew its defense, the City retained its own counsel.

Subsequently, the City filed a second motion for summary judgment with respect to Byrd's inverse condemnation claim. At the hearing on this motion, Byrd conveyed his theory that officials with the City and the County "conspired to have Darlington County 'flag' [his] property so that it could not be sold."

By order dated September 11, 2002, the circuit court granted the City's motion concerning the inverse condemnation cause of action, but denied the motion "with respect to the claim that the City of Hartsville has conspired with the County of Darlington in its actions." In so holding, the court reasoned:

> [A]s to the allegation by [Byrd] that the City of Hartsville was involved with the County in "flagging" the property, it would be inappropriate, at this time, for Summary Judgment to be granted. However, with respect to any independent acts by the City of Hartsville Officials, the Court finds that Summary Judgment would be appropriate as to those allegations.

Ultimately, on March 20, 2003, the circuit court dismissed the City as a defendant in Byrd's lawsuit. In reaching this decision, the court concluded that "South Carolina Code Section 15–78–60(17), as amended, grants immunity to the City of Hartsville for actions taken by its employees, even if proved, which would have involved an intent to harm Mr. Byrd, the Plaintiff, as it is claimed to have conspired with County employees." In its order denying Byrd's motion for reconsideration, the circuit court stated:

> In its Motion for Reconsideration, [Byrd] contends that these actions by the City of Hartsville, working along side the County of Darlington, would be independent conduct by the City of Hartsville, constituting inverse condemnation. The Court, however, concludes that this would be evidence of a conspiracy and, thus, is in fact, a tort and not a contract and is, thus, barred by the aforementioned Statute. As

previously stated, the Court had already concluded in its Order of September 11, 2002, which was unappealed, that there were no independent acts or conduct by the City of Hartsville which would support an inverse condemnation claim.

Byrd appealed to the Court of Appeals. This Court certified the appeal pursuant to Rule 204(b), SCACR. In *Byrd v. City of Hartsville*,[4] 365 S.C. 650, 620 S.E.2d 76 (2005), this Court affirmed the circuit court's orders, holding: (1) the conspiracy claim was not before the Court given Byrd did not appeal from the circuit court's decision that the City would be immune from liability under the Tort Claims Act even if there were a conspiracy; and (2) summary judgment in favor of the City was proper because Byrd could not demonstrate that the City inversely condemned his property through regulatory delay.

While Byrd's appeal was pending, the City filed this declaratory judgment action against the Insurer to recover all costs incurred by the City in defending against Byrd's lawsuit after the Insurer withdrew its defense. Specifically, the City claimed the Insurer breached its contract of insurance with the City "while covered claims against [the City], including a tort claim for conspiracy, was still being litigated." Based on this alleged breach of contract, the City claimed it was entitled to be reimbursed for the costs and expenses of having to defend against the Byrd lawsuit since March 28, 2002, through the appeal. In response, the Insurer denied liability to the City on the ground that all claims which remained against the City after the February 22, 2002 order, including the conspiracy claim, were not covered by the liability policy issued to the City.

After a hearing, the circuit court ruled in favor of the City by order dated May 10, 2007. In reaching this decision, the court found: (1) Byrd's conspiracy claim against the City was a tort action that was separate from the cause of action for inverse condemnation; and (2) the conspiracy claim, a common law tort action, was not specifically excluded by the Tort Claims Act. Based on these findings, the court concluded the

4. Because the County settled with Byrd, it was not a party to the appeal.

Insurer was contractually bound to defend the City against all tort claims, including the conspiracy claim. As a result, the court ordered the Insurer to reimburse the City for its defense costs in the amount of $17,642.55.

The Insurer appeals the circuit court's decision.

## DISCUSSION

The Insurer argues the circuit court erred in finding it had a continuing duty to defend the City after the cause of action for negligent misrepresentation was dismissed. The Insurer claims its duty to defend terminated at this point because any remaining duty to defend the City was based on the specifically-excluded inverse condemnation claim. The Insurer contends the remaining civil conspiracy cause of action did not "trigger" a duty to defend because the claim: (1) was not specifically pled by Byrd; (2) arose from the same alleged acts of the City as the inverse condemnation claim and was, therefore, subject to the same exclusion in the liability policy; and (3) constitutes an intentional tort which is barred by sovereign immunity under section 15–78–60 of the Tort Claims Act.

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). A suit to determine coverage under an insurance policy is an action at law. *State Farm Mut. Auto. Ins. Co. v. James,* 337 S.C. 86, 93, 522 S.E.2d 345, 348–49 (Ct.App.1999). Therefore, this Court's jurisdiction "is limited to correcting errors of law and factual findings will not be disturbed unless unsupported by any evidence." *Id.*

Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint. *C.D. Walters Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.,* 281 S.C. 593, 316 S.E.2d 709 (Ct.App.1984). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend. *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.,* 274 S.C. 468, 265 S.E.2d 38 (1980).

An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured. *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 236 S.E.2d 818 (1977). However, these duties are interrelated. If the facts alleged in a complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend. *R.A. Earnhardt Textile Mach. Div. v. S.C. Ins. Co.,* 277 S.C. 88, 282 S.E.2d 856 (1981). Accordingly, the allegations of the complaint determine the insurer's duty to defend. *Hartford Accident & Indem. Co. v. S.C. Ins. Co.,* 252 S.C. 428, 166 S.E.2d 762 (1969).

"Although the cases addressing an insurer's duty to defend generally limit this duty to whether the allegations in a complaint are sufficient to bring the claims within the coverage of an insurance policy, an insurer's duty to defend is not strictly controlled by the allegations in the complaint. Instead, the duty to defend may also be determined by facts outside of the complaint that are known by the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg,* 377 S.C. 643, 657, 661 S.E.2d 791, 798 (2008); *see BP Oil Co. v. Federated Mut. Ins. Co.,* 329 S.C. 631, 638, 496 S.E.2d 35, 39 (Ct.App.1998) ("Although the determination of an insurer's duty to defend is based upon the allegations in a complaint ... in some jurisdictions, the duty to defend will be measured by facts outside of the complaint that are known by the insurer.").

## I.

As its first argument, the Insurer contends it had no duty to defend the City regarding Byrd's cause of action for civil conspiracy because it was not specifically pled and, thus, did not invoke potential liability coverage.

Although the Insurer conceded this issue during oral argument before this Court, we take this opportunity to reiterate the standard for determining an insurer's duty to defend.

Based on the above-outlined principles, we find Byrd's failure to plead the elements of the civil conspiracy did not negate the Insurer's duty to defend the City on this cause of action. Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the complaint and not

the specifically identified causes of action. Moreover, an insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer.

In the instant case, the City acknowledged that Byrd did not specifically plead civil conspiracy in his original or amended complaints. However, as evidenced by the circuit court's orders, the allegations in these pleadings set forth Byrd's theory that the City and the County conspired to flag his property which prevented him from pursuing commercial development. Therefore, the allegations in the pleadings, the facts known to the insurer, and the circuit court's recognition of Byrd's conspiracy claim, created a possibility of coverage under the Insurer's liability policy. Accordingly, the Insurer was not justified in withdrawing its defense based on Byrd's failure to specifically plead a cause of action for civil conspiracy, particularly given the circuit court's express authorization of Byrd's continued pursuit of this claim. *See Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct.App.1991) (discussing an insurer's duty to defend and stating "[i]n examining the complaint, we must look beyond the labels describing the acts, to the acts themselves which form the basis of the claim against the insurer").

## II.

Even if Byrd had pled conspiracy, the Insurer avers that this claim did not provide a basis for coverage independent from that of the inverse condemnation cause of action. Specifically, the Insurer contends that the "heart of the conspiracy claim is 'flagging,' which cannot be separated from the inverse condemnation claim against the County." Relying on the policy language of the inverse condemnation exclusion, the Insurer asserts the conspiracy claim "arose out of" the inverse condemnation claim. Because a claim for inverse condemnation is excluded under the liability policy, the Insurer argues it had no duty to defend the City against the civil conspiracy claim.

For several reasons, we disagree with the Insurer's contention. First, it is instructive to examine the elements of inverse condemnation and civil conspiracy.

■ The elements of an inverse condemnation are (1) affirmative conduct of a governmental entity, and (2) a taking. *Byrd v. City of Hartsville,* 365 S.C. 650, 657, 620 S.E.2d 76, 79–80 (2005).

■ In contrast, the tort of civil conspiracy contains three elements: (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages. *Pye v. Estate of Fox,* 369 S.C. 555, 566–67, 633 S.E.2d 505, 511 (2006); *Kuznik v. Bees Ferry Assocs.,* 342 S.C. 579, 610, 538 S.E.2d 15, 31 (Ct.App.2000) ("It is well-settled in South Carolina that the tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) causing plaintiff special damage.").

■ "An action for civil conspiracy may exist even though respondents committed no unlawful act and no unlawful means were used." *LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 70, 370 S.E.2d 711, 713 (1988). "Specifically, it is not necessary for a plaintiff asserting a civil conspiracy cause of action to allege an unlawful act in order to state a cause of action, although a civil conspiracy may be furthered by an unlawful act." *Id.* "Thus, lawful acts may become actionable as a civil conspiracy when the *object is to ruin or damage the business of another." Id.* (citations omitted) (emphasis added).

■ "The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to the combination, not the agreement or combination per se." *Pye,* 369 S.C. at 567–68, 633 S.E.2d at 511. "Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in *other causes of action." Id.* at 568, 633 S.E.2d at 511 (emphasis added).

■ As evidenced by the above-outlined principles, the elements and damages for the two causes of action are distinctly different.

Initially, we note the "object" of the alleged civil conspiracy is not entirely clear from the pleadings. Conceivably, such a conspiracy could have been intended to prevent Byrd from

commercially developing the City tract but also from developing any other potentially acquired properties in the City or the County. Had the City and the County actually conspired, such a conspiracy could have had further reaching implications than just adversely affecting Byrd's City tract in an effort to preserve the NHL designation. Thus, the "object" of the civil conspiracy was not necessarily a "taking" or "inverse condemnation" of Byrd's property.

In terms of the elements of the causes of actions, a claim for civil conspiracy would have required Byrd to establish the existence of an overt act committed by a combination of individuals for the purpose of injuring Byrd. These elements were not present in Byrd's claim for inverse condemnation. Moreover, in order to prevail on his civil conspiracy claim, Byrd did not have to prove that a "taking" occurred.

Secondly, it is significant that the circuit court permitted Byrd to pursue his conspiracy claim after the court simultaneously dismissed the inverse condemnation cause of action. Clearly, this decision evidenced the circuit court's belief that Byrd's claim of civil conspiracy was a tort action that existed separate and independent from the inverse condemnation claim. Although the conspiracy claim was ultimately dismissed by the circuit court under the Tort Claims Act, we find the Insurer had a continuing duty to defend as long as there was a possibility of liability coverage for this tort claim.

Moreover, a review of the applicable exclusion in the liability policy does not support the Insurer's argument. The Insurer relies on the following language:

> Inverse condemnation, condemnation, temporary taking, permanent taking, *or any claim arising out of* or *in any way connected with the operation of the principles of eminent domain;* adverse possession or dedication by adverse use. (emphasis added).

Even though the facts of both causes of action were "intertwined," Byrd's claim for civil conspiracy was not inextricably connected or necessarily "arose out of" the inverse condemnation cause of action. As evidenced by the discussion regarding the elements of each cause of action, a civil conspiracy claim

does not necessarily·involve a "taking" or "the operation of the principles of eminent domain." [5]

Finally, any policy exclusion should be construed narrowly and in favor of the City. Because the Insurer's liability policy does not specifically exclude a cause of action for conspiracy, we find the Insurer was obligated to defend the City regarding this remaining cause of action. *See Town of Duncan v. State Budget & Control Bd., Div. of Ins. Servs.*, 326 S.C. 6, 16, 482 S.E.2d 768, 774 (1997) (recognizing that an insurer is not justified in refusing to defend entire lawsuit containing several causes of action where some causes of action are covered

---

**5.** In support of its argument that the civil conspiracy claim "arose out of" the inverse condemnation·cause of action, the Insurer primarily relies on *South Carolina Municipal Insurance and Risk Fund v. City of Myrtle Beach*, 368 S.C. 240, 628 S.E.2d 276 (Ct.App.2006). We find this case is distinguishable from the instant case.

In *City of Myrtle Beach*, the City was subjected to a class action lawsuit challenging a city ordinance which held landlords secondarily liable for their tenants' water bills. After judgment was granted to the class, the City sought indemnification from its insurer. *Id.* at 241, 628 S.E.2d at 277. In turn, the insurer filed a declaratory judgment requesting declarations that its liability policy with the City did not cover any of the claims or damages asserted by the class. In support of its action, the insurer relied on a policy provision which specifically excluded inverse condemnation actions. Because the policy excluded coverage for inverse condemnation actions, the insurer contended the class members' claim of a taking in violation of equal protection and' due process was also excluded from coverage. *Id.* at 242, 628 S.E.2d at 277. After converting the motion into cross-motions for summary judgment, the trial court ruled in favor of the City. The insurer appealed. *Id.* at 243, 628 S.E.2d at 277.

Addressing only the insurer's contention that its policy expressly excluded coverage for claims based on a taking, the Court of Appeals reversed the trial court. *Id.* at 244, 628 S.E.2d at 278. In so ruling, the court specifically noted that the focus of the appeal was on the coverage provided by the liability policy and not the insurer's duty to defend. On the merits, the court found that the insurer should not have been required to indemnify the City for its loss because "the violation of the class members' rights to due process and equal protection would not have occurred but for the wrongful exercise by the City of its eminent domain power," which in turn fell within the inverse condemnation policy exclusion. *Id.* at 245, 628 S.E.2d at 278–79.

We believe the *City of Myrtle Beach* is distinguishable from the instant case given it involved the insurer's duty to indemnify and not the initial duty to defend. Furthermore, unlike Byrd's claim of civil conspiracy, the class members' claim of a taking, which included allegations of due process and equal protection violations, necessarily arose out of the City's exercise of its eminent domain power.

under the policy and some are not); *see also McPherson v. Mich. Mut. Ins. Co.*, 310 S.C. 316, 319, 426 S.E.2d 770, 771 (1993) (stating "rules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed"); *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 421, 392 S.E.2d 460, 461 (1990) (stating terms in an insurance policy should be liberally construed in favor of the insured).

### III.

Next, the Insurer asserts the circuit court erred in finding that the Tort Claims Act[6] required it to provide coverage for the conspiracy claim and, in turn, established a duty to defend the City against this cause of action. In support of this assertion, the Insurer relies on the provision of the Tort Claims Act which grants sovereign immunity to a political entity for the intentional acts of its employees. S.C.Code Ann. § 15–78–60(17) (2005) (stating a "governmental entity is not liable for a loss resulting from: employee conduct outside the scope of his official duties or which constitutes . . . intent to harm").

In view of this provision, the Insurer argues that "claims based on intentional harm such as conspiracy are barred by sovereign immunity under section 15–78–60(17)." Therefore, the Insurer contends that "if there is no liability under the Tort Claims Act, [the City] has no grounds for arguing that coverage must be provided." Based on this reasoning, the Insurer avers it had no duty to defend the conspiracy claim.

The Tort Claims Act provides that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C.Code Ann. § 15–78–40 (2005).

"The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it

---

6. S.C.Code Ann. §§ 15–78–10 through –220 (2005 & Supp.2008).

as an affirmative defense." *Plyler v. Burns*, 373 S.C. 637, 651, 647 S.E.2d 188, 195–96 (2007). "Provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed in favor of limiting liability." *Id.*

Notably, it appears the Insurer confuses its duty to defend with its obligation to pay for a covered claim. As we interpret its argument, the Insurer believes that if the City is immune under the Tort Claims Act for civil conspiracy claims then there is no liability coverage and, in turn, no duty to defend.

This argument, however, ignores the fact that sovereign immunity is an affirmative defense which must be raised by the party asserting it as a bar to liability. Logically, then the Insurer had a duty to assert this defense on behalf of the City. Thus, the fact that the circuit court ultimately dismissed Byrd's conspiracy claim under the Tort Claims Act is of no consequence to a determination of whether the Insurer had a duty to defend the City on this claim. *See Town of Duncan*, 326 S.C. at 16 n. 14, 482 S.E.2d at 774 n. 14 ("An insurer's duty to defend depends on an initial or apparent potential liability to satisfy a judgment against the insured.").

## IV.

Finally, even if it had a duty to defend the City against the conspiracy claim, the Insurer contends the circuit court erred in finding the duty continued after the circuit court dismissed the claim and Byrd failed to appeal the dismissal.

Because we hold the Insurer had a continuing duty to defend the City even after the negligent misrepresentation claim was dismissed, we agree with the circuit court's assessment of costs against the Insurer. *See Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 554, 436 S.E.2d 182, 186 (Ct.App.1993) ("An insurer that breaches its duty to defend and indemnify the insured may be held liable for the expenses the insured incurs in providing for his own defense.").

As acknowledged by the Insurer, the liability policy provided for the Insurer "to indemnify [the City] all costs and expenses incurred in the investigation, adjustment, settlement, defense *and appeal* of any claim or suit for which coverage is

afforded by this Section III (General Liability) of this Contract." (emphasis added). Therefore, the Insurer was responsible for the costs and expenses incurred by the City through the appeal of Byrd's lawsuit.

## CONCLUSION

Based on the foregoing, we hold the Insurer had a continuing duty to defend the City even after the negligent misrepresentation claim was dismissed given the civil conspiracy claim subjected the City to tort liability. Accordingly, we affirm the order of the circuit court finding the Insurer had a continuing duty to defend and ordering the Insurer to pay the costs and expenses incurred by the City through the appeal of Byrd's lawsuit.

**AFFIRMED.**

TOAL, C.J., WALLER, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.