<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**No. 12-2059**

---

ROSS DEVELOPMENT CORPORATION,

    Plaintiff,

  and

FIREMAN'S FUND INSURANCE COMPANY; UNITED STATES FIRE
INSURANCE COMPANY,

    Defendants - Appellees,

    v.

PCS NITROGEN INCORPORATED,

    Defendant and 3rd-Party Plaintiff - Appellant.

---

**No. 12-2454**

---

ROSS DEVELOPMENT CORPORATION,

    Plaintiff - Appellant,

    v.

FIREMAN'S FUND INSURANCE COMPANY; UNITED STATES FIRE
INSURANCE COMPANY,

    Defendants - Appellees,

  and

PCS NITROGEN INCORPORATED,

Defendant and 3rd-Party Plaintiff.

---

Appeals from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, Senior District Judge. (2:08-cv-03672-MBS)

---

Argued: May 15, 2013                                   Decided: June 6, 2013

---

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: Daniel S. McQueeney, Jr., PRATT-THOMAS WALKER, PA, Charleston, South Carolina; Michael Howard Ginsberg, JONES DAY, Pittsburgh, Pennsylvania, for Appellants. Michael Anthony Kotula, RIVKIN RADLER, LLP, Uniondale, New York; Jay Russell Sever, PHELPS DUNBAR, New Orleans, Louisiana, for Appellees. **ON BRIEF**: G. Trenholm Walker, PRATT-THOMAS WALKER, PA, Charleston, South Carolina, for Ross Development Corporation. Amy K. Pohl, JONES DAY, Pittsburg, Pennsylvania; Kirby D. Shealy, III, ELLIS, LAWHORNE & SIMS, P.A., Columbia, South Carolina; Sandra Kaczmarczyk, ALTON ASSOCIATES PLLC, Washington, D.C., for PCS Nitrogen, Incorporated. H. Michael Bowers, SMITH MOORE LEATHERWOOD LLP, Charleston, South Carolina, for Fireman's Fund Insurance Company; Steven W. Ouzts, TURNER PADGET GRAHAM & LANEY, P.A., Columbia, South Carolina, Jonathan B. Womack, PHELPS DUNBAR LLP, New Orleans, Louisiana, for United States Fire Insurance Company.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ross Development Corporation brought this action seeking a declaratory judgment that its insurers had duties to defend and indemnify Ross, its shareholders, and former directors in lawsuits arising out of the cleanup of environmental contamination from a site formerly owned by Ross. The district court granted the insurers' motions for summary judgment, holding that they had no duty to defend or indemnify. Ross and its judgment creditor from one of the underlying cases, PCS Nitrogen, Inc., appeal. We affirm.

I.

This dispute concerns insurers' asserted duties arising out of the cleanup of environmental contamination from a site that Ross had formerly owned. See PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161 (4th Cir. 2013). The following facts are undisputed.

Beginning in 1906, Planters Fertilizer and Phosphate Company (now Ross) operated a phosphate fertilizer manufacturing facility at a forty-three-acre site in Charleston, South Carolina. Planters manufactured fertilizers by burning pyrite ore as fuel and reacting sulfuric acid with phosphate rock. The process generated a pyrite slag byproduct containing high concentrations of arsenic and lead. Over the years, Planters

used this slag byproduct on the site as fill material and to stabilize roads. In 1963, a fire destroyed a large portion of Planters' acid plant. After constructing a modernized acid plant and resuming fertilizer production, Planters sold the site and its equipment in 1966.

Years after selling the site, Ross bought the insurance policies at issue in this appeal. Ross purchased primary insurance coverage from Fireman's Fund Insurance Company ("FFIC") for the period from 1973 through 1992, and excess coverage from United States Fire Insurance Company ("USFIC") for the period from 1979 through 1984. As relevant to this appeal, each policy provides basic coverage for liability for unexpected and unintentional damages to third-party property, including those damages arising out of past activities on Ross's then-owned, now-alienated properties, like the Charleston site. The policies, however, can be divided into two groups based on the extent to which they exclude from coverage liability arising out of damages caused by pollution.

The first group of policies -- FFIC's primary coverage policies issued for the period from 1973 through 1987 and all of USFIC's excess coverage policies -- include a "qualified pollution exclusion." This provision excludes from coverage, in pertinent part, liability "arising out of the discharge . . . of . . . waste materials or . . . pollutants into the land." The

4

exclusion is "qualified" because it does not apply if the "discharge . . . is sudden and accidental."

The second group of policies -- those issued by FFIC for the period from 1987 through 1990 -- include an "absolute pollution exclusion." This provision excludes from coverage liability for property damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," including waste, with a defined connection to the insured. This exclusion does not contain an exception for "sudden and accidental" discharges, but does except all liability for third-property damage arising out of an otherwise-excluded pollutant discharge if that discharge is "caused by heat, smoke or fumes from a hostile fire."[1]

In the 2000s, Ashley II of Charleston, the current owner of a large portion of the site, began to remediate environmental contamination at the site. The district court summarized the site's present conditions as follows:

> There are four conditions at the Site that the remediation seeks to correct: arsenic contamination, lead contamination, low pH, and carcinogenic polyaromatic hydrocarbon ("cPAH") contamination. Arsenic and lead contamination are found across the entire Site. There are two "hot spots" for cPAHs on the Site. . . . The source of the cPAH contamination was a fire that destroyed a major portion of the acid plant in 1963. The cost of remediation is directly

---

[1] Although FFIC continued insuring Ross beyond 1990, those policies are not at issue in this appeal.

> related to the volume of contaminated soil on the Site. The predominant factors contributing to the costs of the clean-up are the amount of hazardous materials and the spread of these hazardous materials throughout the Site. . . . Ross, formerly known as Planters, is the only known Site owner that burned pyrite ore and generated pyrite slag. Pyrite slag is the source of the vast majority of the arsenic and much of the lead contamination at the Site.

Ross Dev. Corp. v. Fireman's Fund Ins. Co., No. 2:08-3672-MBS, -- F. Supp. 2d --, 2012 WL 5897245, at *2 (D.S.C. Nov. 15, 2012) (internal citations omitted). No party disputes that Planters' use of pyrite slag provides the source of most of the arsenic and lead contamination at the site. The parties do debate, however, how quickly arsenic and lead from the slag leached into surrounding soils and when this contamination migrated to and damaged surrounding third-party properties.

In September 2005, Ashley filed an action against PCS (a successor-in-interest to a former owner of the site) seeking a declaratory judgment that PCS was jointly and severally liable for response costs incurred in remediating contamination at the site under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675 (2006). In January 2007, PCS filed third-party contribution claims against other parties with past and present connections to the site, including Ross. PCS's third-party complaint alleged that Ross was liable under CERCLA for "environmental impacts . . . associated with [Ross'] phosphate

6

fertilizer manufacturing facilities at the Charleston site includ[ing] elevated levels of metals . . . in soil, groundwater, and sediment."

II.

In July 2007, Ross requested a defense of the CERCLA action from FFIC and USFIC. In November 2007, FFIC agreed to defend Ross in the CERCLA action, but reserved the right to withdraw that defense. USFIC did not reply to Ross's request for defense.

In June 2008, FFIC notified Ross that it would be withdrawing its defense under its view that the site was not an "insured premises" under the policies because Ross did not own it during any of the policy periods at issue. However, FFIC did not formally withdraw its defense at that time. On October 13, 2008, Ross informed FFIC by e-mail of new information that "one of the sources of contaminants [was] the fire in 1963 that burned down . . . parts of the [acid] plant." Ross concluded that "[t]his fire would certainly come within the exception to the [pollution] exclusion." FFIC formally withdrew its defense of Ross in the CERCLA action the next day.

On May 27, 2011, after a bench trial, the district court found Ross liable to PCS for forty-five percent of the environmental response costs at the site, see Ashley II of

<u>Charleston, LLC v. PCS Nitrogen, Inc.</u>, 791 F. Supp. 2d 431 (D.S.C. 2011), and we affirmed, <u>see</u> <u>PCS Nitrogen Inc.</u>, 714 F.3d 161.

In the meantime, PCS had brought two additional actions to recover money it believed Ross would owe from the underlying CERCLA case. First, in September 2008, PCS filed a shareholder action in state court seeking contribution from thirty-two former Ross shareholders who received distribution of assets during Ross's winding up of its affairs between 1997 and 2006. Second, in December 2009, PCS filed a fraudulent conveyance action in federal court against six individuals that acted as Ross's directors between 1992 and 2006. Ross sought FFIC's and USFIC's defense of its former shareholders and directors, but the insurers denied this request.

Before the district court in this case was Ross's twice-amended action seeking a declaration that the FFIC and USFIC insurance policies provided coverage for liabilities from the underlying CERCLA action, as well as the related shareholder and fraudulent conveyance suits. Ross also sought a declaration that FFIC and USFIC had breached their duties to defend Ross, its shareholders, and its directors in the three underlying suits. In August 2011, after becoming Ross's judgment creditor in the underlying CERCLA action, PCS filed cross-claims against FFIC and USFIC, also seeking to establish coverage under the

8

policies for liabilities arising out of the three underlying actions.

The district court granted summary judgment to the insurers, holding that the absolute and qualified pollution exclusion provisions excluded any coverage for liability arising out of the underlying CERCLA action and, by relation, the shareholder and fraudulent conveyance suits. The court further held that the complaints in the underlying actions did not trigger the insurers' duties to defend Ross. Ross, and PCS as its judgment creditor, ("Appellants") timely appeal.

### III.

We review a grant of summary judgment de novo. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

Under South Carolina law, "[c]ourts interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning." M & M Corp. of S.C. v. Auto-Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010). "Policies are

construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." Id. However, an insured party bears the burden of proving an exception to an exclusion. Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 460 n.5 (S.C. 2004).

An insurer owes its insured two inter-related duties -- the duty to indemnify (i.e., provide coverage) and the duty to defend. While an insurer's duty to indemnify its insured is determined by applying the facts of an underlying judgment to the policy language, an insurer's duty to defend generally is determined by the underlying complaint. City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009). Thus, "[i]f the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." Id.

After carefully considering the record, the briefs, and the applicable law, and having the benefit of oral argument from the parties, we affirm the judgment in favor of the insurers for the reasons well-stated by the district court. Given the clear and detailed analysis of the district court, we need only address certain principles that Appellants appear to misunderstand.

First, it is clear that the underlying CERCLA action (and, by relation, the shareholder and fraudulent conveyance actions) initially triggered the policies at issue by imposing liability

10

on Ross for environmental damages to third-party property, namely groundwater and tidal marshlands around its former site. See Helena Chem. Co., 594 S.E.2d at 457 (holding "environmental cleanup costs" constitute "property damages"). However, it is equally clear that the qualified or absolute pollution exclusions in each policy exclude this liability from coverage. This is so because Ross's liability for third-party property damages in the CERCLA action "arises out of" its "discharge" -- use as fill material -- of "waste" or a "waste material" -- the pyrite slag byproduct -- on the site. Thus, the only question as to the insurers' duties to indemnify is whether any exception to the pollution exclusions apply.

Appellants first argue that 1972-87 policies provide coverage notwithstanding the qualified pollution exclusion because the pollution damages to third-party property were both "sudden" -- meaning unexpected -- and "accidental." See Greenville Cnty. v. Ins. Reserve Fund, 443 S.E.2d 552, 553 (S.C. 1994) (interpreting "sudden" within the "sudden and accidental" exception to mean "unexpected"). This argument rests on a fundamentally flawed reading of the "sudden and accidental" exception. The exception's plain language requires that the discharge, not the pollution damages, be "sudden and accidental." See, e.g., JA 159 ("[T]his exclusion does not

11

apply if such discharge . . . is sudden and accidental."
(emphasis added)).

The contrary interpretation offered by Appellants would render the qualified pollution exclusion clause completely superfluous. See Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1157 (4th Cir. 1992). This is so because the policies at issue provide coverage only for "an accident . . . which results in . . . property damage neither expected nor intended from the viewpoint of the insured." Appellants' interpretation of the qualified pollution exclusion as excluding "from th[is] basic coverage all releases of pollution except those which cause [unexpected and] unintended damages simply restates th[is] basic coverage and writes the pollution exclusion completely out of the contract." Id. Accordingly, because no party disputes the fact that Ross intentionally used pyrite slag as fill material (i.e., discharged waste) on the site, the "sudden and accidental" exception to the qualified pollution exclusion does not apply. Accord id. at 1158.

Appellants' argument that damages caused by the 1963 acid plant fire are excepted from the policies' pollution exclusions similarly fails. Appellants are correct that if the 1963 fire resulted in third-party property damages during the policy periods at issue here, Ross's resulting liability would be covered both under those policies with qualified pollution

12

exclusions (because the fire was "unexpected" and "accidental) and under those policies with absolute pollution exclusions (because the fire was "hostile"). However, Appellants failed to proffer any evidence that the exceptions actually apply here. See Helena Chem. Co., 594 S.E.2d at 460 n.5. In particular, they failed to point to any evidence that the 1963 acid plant fire actually caused any third-party property damage, much less damage during the policy periods at issue in this case. Accordingly, the district court did not err in holding that no policy before it affords coverage for Ross's underlying CERCLA liability, or the potential liabilities of Ross's former shareholders and directors in the two related actions.

For similar reasons, the district court did not err in holding that the insurers did not have a duty to defend Ross, its shareholders, or its directors in the underlying actions. The complaints in the underlying CERCLA action clearly alleged third-party property damages arising out of the discharge of pollutants or waste materials, triggering each policy's respective qualified or absolute pollution exclusion. Further, the complaints raised no possibility that the discharge was "sudden and accidental," or, indeed, anything other than intentional or part of Ross's ordinary course of business. As South Carolina courts have made clear, "an insurer has no duty to defend an insured where the damage was caused for a reason

13

unambiguously excluded under the policy." USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 797 (S.C. 2008).[2] Thus, the district court did not err in holding that neither insurer had a duty to defend Ross in the underlying CERCLA action, or Ross's former shareholders and directors in the two related cases.

IV.

For these reasons, and for the reasons stated more fully by the district court, the judgment of the district court is

AFFIRMED.

---

[2] Nor did Ross's notice to FFIC that that 1963 acid plant fire was a source of contamination at the site trigger its duty to defend. The notice provided no factual indication that the fire caused any third-party property damages during the relevant policy periods.

14